STATE OF NORTH CAROLINA v. ELROY MITCHELL

No. 440A94

(Filed 8 March 1996)

1. **Criminal Law §§ 328, 329 (NCI4th)— pretrial motion for severance—insufficient evidence of one crime—denial by court—failure to renew motion**

The trial court did not err by denying defendant's pretrial motion to sever the offenses of common law robbery and first-degree murder to prevent prejudice to defendant on the ground there was insufficient evidence of the robbery where the prosecutor's forecast of evidence tended to show that defendant killed the victim during the course of the robbery; the alleged insufficiency of the evidence was not apparent to the trial judge during pretrial motions; and it was only after the presentation of the State's evidence that defendant's grounds for the severance would have been apparent. Furthermore, defendant's right to severance was lost because he did not renew his motion at the close of all the evidence, and even if the motion had been renewed, it would have been properly denied because the State presented sufficient evidence to convict defendant of the robbery.

**Am Jur 2d, Trial §§ 115, 120-122, 128, 138-140.**

**Consolidated trial upon several indictments or informations against same accused, over his objection. 59 ALR2d 841.**

**Appealability of state court order granting or denying consolidation, severance, or separate trials. 77 ALR3d 1082.**

2. **Evidence and Witnesses § 2817 (NCI4th)— allegedly leading questions—allowance not abuse of discretion**

The trial court did not abuse its discretion in permitting the prosecutor to ask a number of allegedly leading questions during the direct examination of three State's witnesses where most of the questions simply directed the witness toward the particular matter being addressed without suggesting the desired answer. N.C.G.S. § 8C-1, Rule 611(c).

**Am Jur 2d, Witnesses §§ 752-756.**

Cross-examination by leading questions of witness friendly to or biased in favor of cross-examiner. **38 ALR2d 952.**

**3. Appeal and Error § 504 (NCI4th)— invited error—hearsay elicited by defendant**

Defendant cannot assign error to hearsay testimony which he elicited. N.C.G.S. § 15A-1443(c).

**Am Jur 2d, Appellate Review § 755.**

**4. Evidence and Witnesses § 906 (NCI4th)— hearsay testimony—no plain error**

An officer's testimony that a robbery-murder victim's sister told him she was with the victim when she was putting Christmas money for her nieces and nephews into envelopes and that the victim used one-dollar rather then five-dollar bills was hearsay, but the admission of this testimony was not a fundamental error amounting to plain error.

**Am Jur 2d, Evidence §§ 658-660; Homicide §§ 329, 330, 430.**

**5. Evidence and Witnesses § 2047 (NCI4th)— lay opinion testimony—proper foundation**

A proper foundation was laid for lay opinion testimony by a murder victim's sister that the victim's air conditioner was in "perfect shape" prior to the victim's death where the sister testified that she had eaten dinner at the victim's house the day before the murder, the air conditioner was located in the dining room where they ate dinner, and she did not notice that the air conditioner was not working at that time.

**Am Jur 2d, Expert and Opinion Evidence §§ 26-31.**

**6. Evidence and Witnesses § 2138 (NCI4th)— impression of color of bag—personal observation as basis**

A witness's testimony that it was her best impression that a cloth bag missing from a murder victim's home was green was not mere speculation but was properly based on her personal observation of the bag. The fact that the witness was equivocal about the color goes to the weight of the evidence and not to its admissibility. N.C.G.S. § 8C-1, Rule 701.

**Am Jur 2d, Expert and Opinion Evidence §§ 365, 366.**

STATE v. MITCHELL

[342 N.C. 797 (1996)]

7. **Criminal Law § 478 (NCI4th)— written questions from juror during evidence—instruction to that juror alone— failure to admonish all jurors**

The trial court did not abuse its discretion by calling one juror into the courtroom alone during a recess while the State was presenting its evidence and instructing the juror outside the presence of the jury panel that the court could not answer questions she had submitted in a handwritten note to the bailiff about perceived discrepancies in the State's evidence. Nor did the trial court err by failing to admonish all jurors of their duty not to discuss the case with one another before deliberation where the note was from one juror only and not from the entire jury. N.C.G.S. § 15A-1236.

**Am Jur 2d, Trial §§ 1573-1579.**

**Communication between court officials or attendants and jurors in criminal trial as ground for mistrial or reversal—post-*Parker* cases. 35 ALR4th 890.**

8. **Evidence and Witnesses § 1505 (NCI4th)— evidence about drawstring bag—motion to exclude properly denied**

The trial court did not err when it denied defendant's motion *in limine* to exclude from defendant's robbery and murder trial all evidence regarding a green and white drawstring bag since the jury could find from the evidence presented at the motion hearing that the bag was still at the victim's house before she was killed and that a bag seen in defendant's possession on the night of the murder was the victim's bag where the victim's sister testified the victim owned a green and white drawstring bag which she had seen at the victim's house several days before the murder; the sister was unable to locate the bag after the murder; the State forecast testimony by a witness that she saw defendant carrying what appeared to be a green drawstring bag on the night the victim was killed; and investigating officers testified that defendant admitted that he was at the victim's home an hour before he was seen with the bag.

**Am Jur 2d, Homicide §§ 409, 413; Trial §§ 94 et seq.**

9. **Evidence and Witnesses § 699 (NCI4th)— hearsay—admissibility for corroboration—absence of limiting instruction—no plain error**

Assuming *arguendo* that the trial court erred by failing to instruct the jury to consider for corroboration only an officer's

**STATE v. MITCHELL**

[342 N.C. 797 (1996)]

testimony that a murder victim's sister told him she could not locate a green and white drawstring bag among the victim's stored belongings, this error was not plain error where the victim's sister had already testified that the family had put items into storage after the body of the victim was found and that a green and white bag was missing, and the jury would not probably have reached a different verdict if the court had instructed the jury to consider the officer's testimony only for corroboration.

**Am Jur 2d, Evidence § 430.**

**10. Homicide § 277 (NCI4th)— felony murder—common law robbery as underlying felony—sufficient evidence**

There was sufficient evidence of the underlying felony of common law robbery to support defendant's conviction of first-degree murder under the felony murder rule where the State's evidence tended to show that defendant was in the victim's house on the day the murder was committed; after the murder, defendant was seen carrying a drawstring bag similar to one that belonged to the victim, and the bag appeared to have something in it; a shoe box containing $140 and a green and white drawstring bag were missing from the victim's apartment; the bag usually hung on the back of a closet door and the shoe box was normally kept at the foot of the victim's bed in the same corner of the bedroom; a file cabinet in this corner had been moved and its handle was found on the floor near the victim's body; and the victim's wrists were tied with belts that had been taken from the closet where the bag usually hung. A reasonable fact finder could infer that defendant had been in the corner of the house where the bag and shoe box were kept, that the shoe box was in the bag defendant was seen carrying the night of the murder, and that this bag was the bag missing from the victim's house.

**Am Jur 2d, Homicide § 46.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Grant (Cy A.), J., at the 28 February 1994 Criminal Session of Superior Court, New Hanover County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to an additional judgment imposed for common law robbery was allowed on 17 February 1995. Heard in the Supreme Court 15 November 1995.

*Michael F. Easley, Attorney General, by Debra C. Graves, Assistant Attorney General, for the State.*

*Margaret Creasy Ciardella for defendant-appellant.*

FRYE, Justice.

Defendant, Elroy Mitchell, was indicted for first-degree murder and common law robbery. He was tried capitally. The jury found defendant guilty of common law robbery and of first-degree murder under theories of premeditation and deliberation and felony murder. After a capital sentencing proceeding conducted pursuant to N.C.G.S. § 15A-2000, the jury recommended and the trial judge imposed a sentence of life imprisonment for the first-degree murder conviction. The judge also sentenced defendant to ten years' imprisonment for the robbery conviction.

Defendant makes eight arguments on appeal to this Court. We reject each of these arguments and conclude that defendant received a fair trial, free from prejudicial error.

The State's evidence at trial tended to show the following facts and circumstances: At approximately 2:00 p.m., on Friday, 14 August 1992, Ethel Corbett, the victim's sister, took the victim, Alberta Futch, to run some errands. When they returned from the errands, the victim attempted to give Corbett five dollars, which Corbett refused. The victim placed the money in her purse, entered her home, and was never seen alive again by Corbett.

Futch usually went to church every Friday night with her brother, James Mitchell, who was also defendant's grandfather. On Friday, 14 August 1992, when Mitchell attempted to telephone Futch at 6:50 p.m., no one answered. Evelyn McClain also attempted to reach Futch by telephone at 7:00 p.m. on that same evening, but did not get an answer. The last time anyone remembered speaking with Futch was at 6:00 p.m. on 14 August 1992.

Glotherine Everett, the victim's cousin, had been attempting to contact Futch by telephone since 6:45 p.m. on the evening of 14 August 1992, but no one answered. On the following morning, 15 August 1992, Everett, concerned about the victim, contacted Corbett to see if anyone had spoken with the victim. Corbett and Mitchell then drove to the victim's home, where they were joined by Carolyn Evans, the victim's daughter. Corbett had called Evans and asked her to meet them at the victim's house.

When Mitchell, Corbett, and Evans arrived at the house, they found that the front gate and the door of the house were unlocked. Upon entering the house, they found the victim's slip lying on the living room floor. All the lights were off. The eighty-one-year-old victim was lying face down on the rear bedroom floor. Her hands were bound loosely behind her back with belts from dresses which usually hung in the bedroom closet. Corbett noted that the victim was clothed in the same dress she had worn the previous day when Corbett had taken the victim to run some errands. The victim's panty hose and panties were down around her ankles. Corbett immediately untied the victim's hands and then called the Wilmington Police Department.

When the police arrived, they found the house neat and orderly, with a few exceptions. In the bedroom, a file cabinet that was in the corner near the door had been moved, and its handle was on the bedroom floor near the victim's body. Two bricks that the victim kept next to the back door of the house were also found near her body. There was a place setting for one person and a glass of water on the kitchen table. Food had obviously been eaten, and some dried cream of wheat and peas remained in pots on the stove. Clothes that had been doused with detergent were in the washing machine. The ringer on the telephone was turned off.

The victim's jewelry box was undisturbed, and none of her jewelry appeared to be missing. Futch had laid out some clothes, and $100.00 was found under the clothing. The back porch and screen doors were locked, and Futch's Bible and purse were on the kitchen table. Corbett observed that the five-dollar bill she had seen earlier in the victim's purse was missing, but $15.00 was hidden in a secret compartment in the victim's purse. A green and white duffle bag which normally hung on the back of Futch's bedroom door was also missing. A shoe box, which at one time contained approximately $140.00, was missing as well. With police approval, Futch's relatives were allowed to clean the entire house the weekend of her death.

An autopsy revealed multiple scratches and cuts about the victim's neck, pinpoint eye hemorrhages, a bruised lip and mouth, bruises on the right anterior thigh and groin, and bruises to the upper left chest. Futch had also suffered blows to the head and had multiple rib fractures consistent with her body being stomped by someone's foot. There was no evidence that she had been sexually assaulted, and her stomach contained a partially digested meal. The

medical examiner concluded that the victim had been strangled to death by someone's hands and that the pressure had been applied more than once. The victim's hands had not been tied during the strangulation.

Futch, defendant's great-aunt, had raised defendant's father, and although she treated defendant like a grandson, he had not visited her in several years. However, on the day before the body was found, Geraldine Russell, the victim's neighbor, saw defendant in the victim's yard while the victim was not at home. Defendant told Russell that he had come to the house to fix his great-aunt's air conditioner but that she was not at home. He added that he would return later. Defendant was wearing khaki shorts and a beige shirt. Defendant's grandfather, who did most of the victim's repairs, had been to Futch's house on 13 August 1992 to fix the victim's bathroom sink, and the victim neither complained about the air conditioner nor mentioned defendant. None of the witnesses who testified remembered Futch complaining about her air conditioner during the days just before the murder, nor did they remember the victim mentioning that defendant was coming to her house.

At noon on Thursday, 13 August 1992, defendant was paid by his employer, Murray's Transfer. He left in the company truck and was supposed to return it by 5:00 p.m. that day, but the truck was not seen again until shortly before noon on the next day when it appeared in the employer's parking lot. At about 4:00 p.m. on 13 August 1992, defendant picked up Milton Jones and purchased beer, cigarettes, marijuana, and crack cocaine. Defendant and Jones smoked crack and marijuana and drank beer. Defendant, still driving the company truck, dropped Jones off at about 8:00 p.m. that evening. Defendant slept at a friend's house that night and told her when he left the next morning that he would bring her some money to pay her after he picked up his paycheck from work. When he left, he was wearing his work clothing.

Defendant was next seen by Zella Smith at approximately 8:00 p.m. on the evening of 14 August 1992. Defendant stopped by Smith's house to see if another friend was there. Upon leaving Smith's house, defendant went to Rick Barnes' house. Defendant remained at Barnes' house for several days and did not return to work after he left on 13 August until 24 August 1992. When defendant returned to his place of employment on 24 August 1992, he was arrested for a probation violation.

Defendant told the investigating officers that he was at the victim's house continuously from 3:30 p.m. until 6:30 p.m. on 14 August 1992 and that she did not receive any telephone calls while he was there. He also stated that he turned a knob on her air conditioner, adjusted her blinds, and set her clock while he was there.

Defendant did not testify or present any evidence at trial. His motion to dismiss for insufficiency of the evidence was denied.

**[1]** As his first argument, defendant contends the trial judge erred by failing to sever the offenses of common law robbery and murder. At the beginning of the trial, the prosecutor moved for joinder of the offenses. Defendant made a severance motion. The trial judge granted the prosecution's motion for joinder and denied defendant's severance motion. Defendant argues severance was necessary to prevent prejudice to him because there was not sufficient evidence of the robbery.

N.C.G.S. § 15A-926(a) governs joinder and provides, in part, that "[t]wo or more offenses may be joined . . . for trial when the offenses . . . are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." Once it has been determined that the offenses have a transactional connection, it is within the trial court's discretion to consolidate them for trial. *State v. Huff*, 325 N.C. 1, 22-23, 381 S.E.2d 635, 647 (1989), *sentence vacated on other grounds*, 497 U.S. 1021, 111 L. Ed. 2d 777 (1990). Defendant does not argue that the robbery and murder were not transactionally connected. Instead, he contends that his motion for severance should have been granted because the joinder was unduly prejudicial.

N.C.G.S. § 15A-927(b)(1) governs severance and provides, in part, that "[t]he court, on motion of the prosecutor or on motion of the defendant, must grant a severance of offenses . . . [i]f before trial, it is found necessary to promote a fair determination of the defendant's guilt or innocence of each offense." We have stated that when considering a motion for severance "the trial judge must consider whether the accused can receive a fair hearing on more than one charge at the same trial; if consolidation hinders or deprives the accused of his ability to present his defense, the charges should not be consolidated." *State v. Silva*, 304 N.C. 122, 126, 282 S.E.2d 449, 452 (1981). The trial court can consider only the evidence before it when the motion is made. Therefore, this Court, when considering the pro-

STATE v. MITCHELL

[342 N.C. 797 (1996)]

priety of the trial court's ruling on the severance motion, examines only the evidence that was before the trial court.

Defendant made his motion for severance before any evidence was presented. The prosecutor's forecast of evidence tended to show that defendant killed the victim during the course of the robbery. Defendant contended that the evidence was insufficient to support a conviction of robbery. However, during the pretrial motions, this alleged insufficiency was not apparent to the trial judge. The trial judge had no grounds to find that severance was necessary to promote the fair determination of defendant's guilt or innocence. It was only after the presentation of the State's evidence that defendant's grounds for severance would have been apparent.

Defendant acknowledges in his brief that he failed to renew his pretrial motion for severance at the close of the State's case. Thus, the trial court did not have an opportunity to rule on the severance question after the presentation of evidence. Furthermore, as the severance statute specifically provides, "[a]ny right to severance is waived by failure to renew the motion" at the close of all the evidence. N.C.G.S. § 15A-927(a)(2) (1988). Because defendant did not renew his motion at the close of all the evidence, his right to severance was lost.

Nevertheless, we conclude that even if defendant had renewed his severance motion at the close of all the evidence, the trial court would not have erred by denying defendant's motion. As stated previously, defendant contends that severance was unduly prejudicial because there was insufficient evidence to convict him of robbery. However, as discussed later in this opinion, the State introduced sufficient evidence to convict defendant of the robbery. Accordingly, we reject defendant's argument.

[2] In his second argument, defendant contends the trial court erred by permitting the prosecutor to ask a number of leading questions during the direct examination of a number of the State's witnesses. Defendant did not object to these questions and now argues that this Court should review these questions under the plain error rule.

A leading question is usually defined as one which suggests the desired response and one which may frequently be answered "yes" or "no." However, a question is not necessarily leading simply because it may be answered yes or no. *State v. Riddick*, 315 N.C. 749, 755, 340 S.E.2d 55, 59 (1986). Under our rules of evidence as codified by our

legislature, "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony." N.C.G.S. § 8C-1, Rule 611(c) (1992). It is well settled in this State that a ruling on the admissibility of a leading question is in the sound discretion of the trial court, and these rulings are reversible only for an abuse of discretion. *Riddick*, 315 N.C. at 755, 340 S.E.2d at 59.

In the instant case, two of these questions were directed to the medical examiner; four to a neighbor, Willie Norse; and the remaining nine questions were to Ethel Corbett, an elderly cousin of the eighty-one-year-old victim. While some of these questions might be considered borderline, most simply directed the witness toward the particular matter being addressed without suggesting the desired answer. In any event, we have examined the questions and answers, to which no objections were made, and we find no abuse of discretion by the trial court. Accordingly, we find it unnecessary to review this assignment of error under the more stringent plain error standard.

**[3]** In defendant's third argument, he contends that the trial court erred by admitting inadmissible hearsay evidence. In separate assignments of error, defendant contends that statements made by Detective Harris and Officer Hayes were hearsay. However, while the statement made by Detective Harris was hearsay, it was elicited from Detective Harris by defense counsel. Defendant cannot assign error to hearsay testimony which he elicited. N.C.G.S. § 15A-1443(c) (1988) (a defendant may not complain of prejudice "resulting from his own conduct"); *State v. Gay*, 334 N.C. 467, 485, 434 S.E.2d 840, 850 (1993) ("[i]nvited error" does not merit relief); *State v. Rivers*, 324 N.C. 573, 575-76, 380 S.E.2d 359, 360 (1989). Thus, we reject defendant's assignment of error as to Detective Harris' statement.

**[4]** Defendant is correct that the statement by Officer Hayes was hearsay that did not fall into any recognized exception. Officer Hayes testified that Ethel Corbett told him that she was with the victim when she was putting Christmas money for her nieces and nephews into envelopes and that the victim used one-dollar bills, not five-dollar bills. Defendant did not object to this statement at trial; therefore, this assignment of error must be examined under the plain error rule. We note, however, that

the plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "fundamental error, some-

thing so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a *fundamental* right of the accused," or the error has "resulted in a miscarriage of justice or in the denial to appellant of a fair trial" or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the . . . mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982) (footnote omitted)), *quoted in State v. Weathers*, 339 N.C. 441, 450, 451 S.E.2d 266, 271 (1994). This is not the exceptional case where, after reviewing the entire record, we can say that the claimed error is so fundamental that justice could not have been done. Accordingly, we reject this assignment of error and defendant's third argument.

[5] In his fourth argument, defendant contends the trial court erred by allowing witnesses to testify to matters based on speculation and conjecture and not on personal knowledge. Ethel Corbett testified that the victim's air conditioner was "in perfect shape" prior to the victim's death and that she always knew who was at the victim's house when she called because the victim would always tell her who was there.

Corbett's testimony at trial demonstrated that she and the victim spent a large amount of time together and that they talked often during the course of a day. Corbett had eaten dinner at the victim's house the day before the murder, and she testified that she had not noticed that the air conditioner was not working at the time. Corbett also testified that the victim's air conditioner was located in the dining room where they ate dinner on 13 August 1992. A proper foundation was laid for Corbett's conclusion, as a layperson, that the air conditioner was in "perfect shape." As for Corbett's testimony that the victim normally told her if anyone was there when she called the victim, defendant's contentions go more to the weight and credibility of the evidence than to its admissibility.

[6] Defendant also contends that Zella Smith should not have been allowed to testify about the green and white bag missing from the victim's residence. The following exchange took place between the prosecutor and Smith:

Q.  Can you describe the cloth bag?

A.   It's one of those pull string bags, I guess. It was green, light colored green. I don't really know what color. I know it was one of those cloth bags.

Q.  What's your best impression as to the color of it?

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

A.  Green.

Defendant argues that it was clear that Smith did not know the color of the bag; therefore, the trial court erred in admitting this testimony.

However, we conclude that Smith's testimony was not mere speculation, but was based on her personal observation of the bag. Lay witnesses are allowed to give opinions which are rationally based on perceptions of the witness and which are helpful to a clear understanding of a fact in issue. N.C.G.S. § 8C-1, Rule 701 (1986); *State v. Shuford*, 337 N.C. 641, 650, 447 S.E.2d 742, 747 (1994); *State v. Shaw*, 322 N.C. 797, 809, 370 S.E.2d 546, 552 (1988). The fact that Smith was equivocal about the color goes to the credibility and weight of the evidence and not to its admissibility. Accordingly, we reject this assignment of error and defendant's fourth argument.

[7]  Defendant, in his fifth argument, contends the trial court committed plain error by instructing one juror outside of the presence of the full jury panel and by failing to admonish the full jury of its duty not to discuss the case prior to deliberations.

During a recess, and after advising counsel that juror number two had submitted a handwritten note to the bailiff, the trial judge called juror number two into the courtroom alone and advised her that he could not answer her questions. The remaining members of the jury returned, and the State continued presenting its case. Defendant contends the trial court's failure to have the entire jury in the courtroom when it received the note from the juror and when it responded to her questions was prejudicial *per se*. Moreover, defendant contends that the trial court compounded the error by failing to admonish the jurors of their duty not to discuss the case with one another before deliberation.

The contents of the note submitted to the judge were not given to defendant or the State, but the trial judge did say that the juror had

pointed out what she perceived to be several discrepancies in the State's evidence. Not wishing to reveal these discrepancies to the State, the court wisely decided not to answer the questions in the note. Defendant contends that the full jury should have been called into the courtroom and that the trial judge should have told all of the jurors that he was not going to answer the questions. Defendant argues that the entire jury should have been admonished because, although the written request came from juror number two, the note came from the entire jury. However, the judge clearly stated in portions of the transcript that the note was from juror number two only and was not from the entire jury.

This Court has held that the judge is required to address the entire jury where there has been a request from jurors for certain evidence and testimony once they begin their deliberations. *State v. Nelson*, 341 N.C. 695, 462 S.E.2d 225 (1995); *State v. Ashe*, 314 N.C. 28, 331 S.E.2d 652 (1985). In the instant case, the jury deliberations had not begun. Nevertheless, defendant asks that we require the trial court to address the entire jury when one juror asks a question, even before the jury has begun to deliberate. However, addressing juror number two's note in front of the entire jury would have called unnecessary attention to the situation and perhaps caused discussions among the jurors. According to N.C.G.S. § 15A-1236, the trial court has the discretion, with several enumerated exceptions, to determine when it is appropriate to admonish the jury. We believe the trial judge here chose the better course of action by addressing his response to juror number two rather than to the entire jury panel. Clearly, there was no abuse of discretion by the trial judge.

[8] As his sixth argument, defendant contends the trial court erred when it denied defendant's motion *in limine* to exclude all evidence regarding a green and white bag. Defendant makes two contentions: (1) there was no direct evidence that the bag was in the victim's house at the time of her death, and (2) the bag seen in defendant's possession on the night of the murder was not necessarily the same bag that the victim owned. Therefore, he argues, the introduction of any evidence regarding the bag was irrelevant, inflammatory, and unduly prejudicial.

Defendant made his motion *in limine* to exclude all testimony regarding the green and white bag in the middle of the presentation of the State's case-in-chief. Ethel Corbett had already testified that

STATE v. MITCHELL

[342 N.C. 797 (1996)]

the victim owned a green and white bag that she had seen in the victim's home several days before the murder. Corbett also testified that she was unable to locate the bag after the murder. Investigating officers had testified that defendant admitted that he was at the victim's home until 6:30 or 7:00 p.m. on the night of the murder, just an hour before he was seen by Smith. The State, during the motion hearing, stated that Zella Smith was going to testify that, at 8:00 p.m. on the night that the victim was killed, she saw defendant carrying what appeared to be a green drawstring bag. Corbett's and the officers' testimony and the forecast of Smith's testimony support the trial judge's ruling denying defendant's motion *in limine*. Defendant is correct that there was no *direct* evidence that the bag was in the victim's house at the exact time of death and that the bag seen in defendant's possession on the night of the murder was not *necessarily* the same bag that the victim owned. We conclude, however, that the evidence presented at the motion hearing was sufficient for the jury to find that the bag was still at the victim's house before she was killed and that the bag seen by Smith was the victim's bag. As the trial judge noted during the motion hearing, defendant's argument goes to the credibility and weight of the evidence and not to its admissibility. Accordingly, we conclude that the trial court did not err in denying defendant's motion *in limine*.

[9] For defendant's seventh argument, he contends the trial court erred by failing to properly instruct the jury concerning the corroborative purposes of certain testimony. Officer Brian Pettus of the Wilmington Police Department was allowed to testify about what the victim's sister had told him with regard to the green and white bag. He testified, "We [the police] told Corbett to look through the victim's belongings which had been stored to see if they could locate the bag. She called me the next day, or I may have called her, and said that they could not locate the bag. That it was, indeed, missing."

Defendant, although not explicitly stating so in his brief, appears to be arguing that the statement of Officer Pettus was hearsay that could only be entered into evidence for corroborative purposes. He adds that the testimony was not corroborative and, therefore, was inadmissible. Defendant neither requested that the judge give an instruction that Officer Pettus' testimony was to be introduced for corroboration only nor objected to the admission of the evidence at trial. As such, if there is an error here, it must be examined under the plain error rule.

**STATE v. MITCHELL**

[342 N.C. 797 (1996)]

We have said that

[u]nder the plain error rule, a new trial will be granted for an error to which no objection was made at trial only if a defendant meets a heavy burden of convincing the Court that, absent the error, the jury probably would have returned a different verdict.

*State v. Bronson,* 333 N.C. 67, 75, 423 S.E.2d 772, 777 (1992). Assuming *arguendo* that there was error here, it did not rise to the level of plain error. Corbett had already testified that the green and white bag was missing and that the family had put items into storage after the body of the victim was found. Defendant has not convinced this Court that the jury probably would have reached a different verdict had the judge instructed the jury that Officer Pettus' testimony should be considered for corroborative purposes only. Accordingly, we reject defendant's seventh argument.

In his eighth argument, defendant contends that the trial court erroneously denied defendant's motion to dismiss because the evidence was insufficient to convict defendant of both robbery and murder. We disagree.

On a defendant's motion for dismissal on the ground of insufficiency of the evidence, the trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. *State v. Vause,* 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). What constitutes substantial evidence is a question of law for the court. *Id.* To be "substantial," evidence must be existing and real, not just "seeming or imaginary." *State v. Earnhardt,* 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Vause,* 328 N.C. at 236, 400 S.E.2d at 61. "If there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *State v. Locklear,* 322 N.C. 349, 358, 368 S.E.2d 377, 382-83 (1988).

In ruling on a motion to dismiss, the trial court must examine the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference that can be drawn therefrom. *State v. Powell,* 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). The determination of the witnesses' credibility is for the jury. *See Locklear,* 322 N.C.

at 358, 368 S.E.2d at 383. "The trial court's function is to determine whether the evidence will permit a reasonable inference that the defendant is guilty of the crimes charged." *State v. Vause,* 328 N.C. at 237, 400 S.E.2d at 61.

[10] First, defendant contends that there was insufficient evidence to convict him of common law robbery. This Court has said:

> To withstand a motion to dismiss a common-law robbery charge, the State must offer substantial evidence that the defendant feloniously took money or goods of any value from the person of another, or in the presence of that person, against that person's will, by violence or putting the person in fear.

*State v. Davis,* 325 N.C. 607, 630, 386 S.E.2d 418, 430 (1989), *cert. denied,* 496 U.S. 905, 110 L. Ed. 2d 268 (1990). Defendant contends that the State did not present evidence that anything was taken from the victim. We disagree.

The State's evidence at trial showed that defendant was in the house on the day the murder was committed and that, after the murder, he was seen carrying a bag similar to the one that belonged to the victim. Zella Smith testified that the bag she saw defendant carrying the night of the murder appeared to have something in it. During the police investigation, it was determined that a shoe box containing $140 could not be found and that a green and white bag owned by the victim was also missing. Both the bag and the shoe box were kept in the same corner of the victim's bedroom. The bag usually hung on the back of a closet door and the shoe box was normally kept at the foot of her bed. A file cabinet was also in this corner. The police found that the file cabinet had been moved and its handle was found on the floor near the victim's body. Also, the victim's wrists were tied with belts that had been taken from the closet where the bag usually hung.

Therefore, a reasonable fact finder could infer that defendant had been in the corner of the house where the bag and shoe box were kept and that the shoe box was in the bag when defendant was seen by Zella Smith. The jury could also find that the bag missing from the victim's house was the same bag defendant had in his possession when he was seen by Smith on the night of the murder. *See State v. Rose,* 339 N.C. 172, 193, 451 S.E.2d 211, 223 (1994) (evidence sufficient to prove robbery where defendant seen with the victim's belongings shortly after murder).

Defendant also contends there was insufficient evidence to convict him of first-degree murder. We disagree. The jury found defendant guilty on both a theory of felony murder and a theory of premeditation and deliberation. Because we have found that there is sufficient evidence of the underlying felony to support defendant's conviction of first-degree murder under the felony murder rule, we need not discuss defendant's contention that there was insufficient evidence to convict him of first-degree murder under a theory of premeditation and deliberation. In *State v. Thomas*, 325 N.C. 583, 593, 386 S.E.2d 555, 560-61 (1989), we said, "[p]remeditation and deliberation is a theory by which one may be convicted of first degree murder; felony murder is another such theory. Criminal defendants are not convicted or acquitted of theories; they are convicted or acquitted of crimes." Accordingly, we reject defendant's final argument.

For the foregoing reasons, we conclude that defendant received a fair trial, free from prejudicial error.

NO ERROR.