An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-240
NORTH CAROLINA COURT OF APPEALS

Filed: 7 October 2014


STATE OF NORTH CAROLINA

   v.                                    Mecklenburg County
                                      Nos. 12 CRS 252339-341
JIMMY ANTONIO SEVILLA-BRIONES



Appeal by Defendant from judgments entered 24 July 2013 by Judge Jeffrey P. Hunt in Mecklenburg County Superior Court. Heard in the Court of Appeals 27 August 2014.


    *Attorney General Roy Cooper, by Assistant Attorney General Matthew L. Liles, for the State.*

    *Law Office of Margaret C. Lumsden PLLC, by Margaret C. Lumsden, for Defendant.*


   STEPHENS, Judge.


*Evidence and Procedural Background*

In the autumn of 2012, a confidential informant ("the CI") paid by the Drug Enforcement Agency ("DEA") reported to officers of the Charlotte-Mecklenburg Police Department ("CMPD") that Defendant Jimmy Antonio Sevilla-Briones was claiming to have access to large amounts of methamphetamine. Beginning in

November 2012, the CI initiated three purchases of methamphetamine from Defendant at the behest of CMPD Officer Eric Duft and DEA Agent James Billings. On 15 November 2012, the CI purchased 2.5 grams of methamphetamine from Defendant, and, on 29 November 2012, the CI bought two ounces of methamphetamine from Defendant (collectively, "the November sales"). The CI then set up a buy of 1 kilogram of methamphetamine to take place on 3 December 2012. The CI, wearing an audio transmitter that intermittently broadcast the transaction to law enforcement officers, met Defendant at a grocery store. They agreed to meet later that afternoon to complete the sale. Defendant arrived for completion of the transaction in a Toyota driven by Alberto Salizar. Following the sale to the CI, CMPD officers arrested Defendant and Salizar at the scene. Based on the 3 December 2012 transaction, Defendant was subsequently charged with trafficking 200 grams or more but less than 400 grams of methamphetamine by possession and transportation, and conspiracy to traffic 200 grams or more but less than 400 grams of methamphetamine.

The jury convicted Defendant of all three charges, and the trial court sentenced him to two consecutive terms of 90-120 months in prison. Defendant was also fined $300,000, and costs

and attorney's fees were assessed against him.  Defendant gave notice of appeal in open court.

*Discussion*

On appeal, Defendant argues that the trial court erred in (1) denying his motion to identify the CI, (2) permitting witnesses to testify about out-of-court statements made by the CI, (3) permitting law enforcement officers to vouch for the credibility of the CI, (4) admitting evidence of the uncharged November drug sales between Defendant and the CI, and (5) admitting video and audiotapes in evidence.  We dismiss in part, find no error in part, and find no prejudicial error part.

*I. Motion to identify the CI*

Defendant first argues that the trial court erred in denying his motion to disclose the identity of the CI, alleging violations of his constitutional due process rights and rights under State law.  Defendant has failed to preserve these issues for our review.

It is well established that "[c]onstitutional issues not raised and passed upon at trial will not be considered for the first time on appeal."  *State v. Mack*, 214 N.C. App. 169, 171, 718 S.E.2d 637, 638 (2011) (citations and internal quotation marks omitted).  As for any alleged violations of Defendant's

rights under State law, our State's appellate courts "will not consider arguments based upon matters not presented to or adjudicated by the trial court." *State v. Haselden*, 357 N.C. 1, 10, 577 S.E.2d 594, 600 (citations omitted), *cert. denied*, 540 U.S. 988, 157 L. Ed. 2d 382 (2003); *see also Mack*, 214 N.C. App. at 171, 718 S.E.2d at 638 (noting that, "[a]s to [the] defendant's argument that the trial court violated his rights under State law, [the] *defendant properly preserved his appellate rights as to his motion to disclose the identity of the State's CI by raising it before the trial court and obtaining a ruling on his motion.* *See* N.C.R. App. P. 10(b)(1).") (emphasis added).

Even where a criminal defendant does seek disclosure of a CI's identity in the trial court, he must still make a sufficient showing of the need for disclosure before the trial court is even required to consider the merits of the request:

> In *Roviaro v. United States*, 353 U.S. 53, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957), the United States Supreme Court held it was not error not to order the Government to reveal the name of an informant when it was alleged that the informant actually took part in the drug transaction for which the defendant was being tried. The Supreme Court recognized the State has the right to withhold the identity of persons who furnish information to law enforcement officers, but said this privilege is limited by the fundamental

> requirements of fairness. *Roviaro* held that no fixed rule with respect to disclosure is justifiable. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.
>
> The privilege of nondisclosure, however, ordinarily applies where the informant is neither a participant in the offense, nor helps arrange its commission, but is a mere tipster who only supplies a lead to law enforcement officers. Moreover, *before the courts should even begin the balancing of competing interests which* Roviaro *envisions, a defendant who requests that the identity of a confidential informant be revealed must make a sufficient showing that the particular circumstances of his case mandate such disclosure.*

*Id.* at 171-72, 718 S.E.2d at 638 (certain citations, internal quotation marks, brackets, and ellipsis omitted; emphasis added).

For example, in one of the leading cases cited by this Court in *Mack*, our Supreme Court declined to address a defendant's arguments on appeal when he failed to make a sufficient showing at trial:

> At the time the trial court sustained the district attorney's objections to defense counsel's questions concerning the identity and remuneration of the confidential informant, [the] defendant had not apprised the court of the particular need he had for

the information. At that point in the trial, the trial judge could only speculate as to the need [the] defendant had for the information. In his brief, [the] defendant argues that the informant's identity should have been revealed so that he could have a chance to make a full and complete defense before the jury. Yet, [the] defendant made no showing before the court at the time of the questions concerning the informant as to his particular need for knowing the identity of the source. The conflicts in the evidence to which [the] defendant now points were not apparent at that stage in the proceeding nor did [the] defendant forecast their appearance. On the basis of this conduct, we hold that [the] defendant has failed to establish that the identity of the informer was relevant and helpful to his defense or essential to a fair determination of the case.

*State v. Watson*, 303 N.C. 533, 537, 279 S.E.2d 580, 583 (1981) (citation omitted).

In contrast, in another case cited in *Mack*, the defendant *did make an argument at trial* about the need to obtain additional information about a confidential informant:

[The law enforcement officer] identified the informer as Earl Gray, but denied any knowledge of his present whereabouts. Following cross[-]examination, [the] defendant moved for the trial court to compel the state to produce Gray's current address, telephone number, or contact him in order "to see if he's [sic] any exculpatory evidence that we might use." Defendant justified this request based on [the officer's] testimony that Gray was a witness to the occurrences inside the restaurant and

remained in [the] defendant's presence while [the officer] and [one of the defendant's acquaintances] consummated the alleged drug sale outside.

*State v. Newkirk*, 73 N.C. App. 83, 86-87, 325 S.E.2d 518, 521 (reaching the merits of the defendant's argument and holding that the trial court's denial of the defendant's motion to compel the State to locate a confidential informant was proper), *disc. review denied*, 313 N.C. 608, 332 S.E.2d 81 (1985).

Here, just before jury selection began, the following exchange took place:

> [DEFENSE COUNSEL]: Your Honor, there is one issue that just popped in my mind in terms of questioning the jurors about who they know. There is the issue of the confidential informant. I think it would be unfortunate if someone does know the CI. Maybe there should be an inquiry of if anybody knows this person, who is the confidential informant in this case.
>
> THE COURT: I don't know quite what you are asking.
>
> [DEFENSE COUNSEL]: I would be more than happy to make the inquiry if someone knows this person.
>
> THE COURT: This person is apparently not going to testify.
>
> [THE STATE]: No, Your Honor, he is not. I can tell the [c]ourt I don't actually know his full name. I don't know his name.

THE COURT: I am not going to let you ask that question. I don't think it's proper to ask that. If you want to get on the record your objection to that, that is fine.

[DEFENSE COUNSEL]: I think for the record we will object.

THE COURT: Yes. Note your exception.

Defendant raised no constitutional issue, and, just as in *Watson*, Defendant utterly "failed to establish that the identity of the informer was relevant and helpful to his defense or essential to a fair determination of the case." 303 N.C. at 537, 279 S.E.2d at 583. Unlike the defendant in *Newkirk*, Defendant did not request disclosure of the CI's identity in order to prepare his defense. Rather, he only sought the CI's identity in order to question prospective jurors about whether any of them knew the CI, presumably so that, if a prospective juror admitted knowing the CI, Defendant could seek to excuse that juror for cause or use a peremptory challenge to excuse him or her. However, the trial court denied Defendant's request because the State did not intend to, and, indeed, did not, call the CI as a witness and his identity was obviously not disclosed to the jury. Accordingly, there was simply no need to question the prospective jurors about their familiarity with the CI. Since the CI's identity was never disclosed to the jurors, they

cannot have been influenced by any familiarity with him. Simply put, the factual circumstance underlying Defendant's only stated reason for wanting to know the CI's identity never arose.

We also reject Defendant's argument in his reply brief that, "[a]fter the State's evidence was presented, trial counsel noted that the CI was a critical witness because he was the only person with knowledge of the entire transaction, because police witnesses knew only some of the facts." The transcript page cited by Defendant in support of this contention is part of Defendant's argument that evidence of the November sales should not be admitted under Rules of Evidence 403 and 404(b). *See* N.C. Gen. Stat. § 8C-1, Rules 403, 404(b) (2013). Defense counsel stated,

> this [evidence] would confuse the jury about making a decision about whether or not this actually happened. We have got a big question here. *We don't have the only person with actual personal knowledge of everything of what was said and what was heard*, including the video. Bits and pieces of law enforcement standing off, listening or observing and seeing and saying, trust me. We know what we are doing.

Thus, while defense counsel did allude to the CI's importance, he did not request disclosure of the CI's identity or make *any* constitutional or State law based argument about the need for Defendant or the jury to know the CI's identity. On the

contrary, his sole reference to the CI was made to support his argument that the Rule 404(b) evidence regarding the November sales should be excluded.

Further, unlike the defendant in *Mack*, Defendant did not present his appellate arguments regarding the identity of the CI to the trial court. We are wholly unpersuaded by Defendant's argument before this Court that seeking to ask prospective jurors if they knew the CI — an "issue that popped in [trial counsel's] head" as jury selection began — constituted a motion for the State to identify the CI based on an articulated need for such information to prepare Defendant's case. Thus, we decline to consider Defendant's arguments on appeal concerning this issue. *See Haselden*, 357 N.C. at 10, 577 S.E.2d at 600.

Defendant did not argue plain error in his brief to this Court, but in his reply brief, Defendant contends that, if "[the State is correct that] the proper standard of review on this issue is plain error[,] . . . . Defendant would still be entitled to a new trial, because the failure to identify the CI deprived Defendant of a fair trial and had a probable impact on the jury's verdict[.]" However, "plain error review in North Carolina is normally limited to instructional and evidentiary error." *State v. Lawrence*, 365 N.C. 506, 516, 723 S.E.2d 326,

333 (2012) (citation omitted).  This Court has held that, because the denial of a motion to disclose the identity of a confidential informant "does not involve instructional or evidentiary error, it will not be reviewed for plain error on appeal."  *State v. Reid*, __ N.C. App. __, __, 735 S.E.2d 389, 395 (2012).  Accordingly, we dismiss Defendant's arguments regarding the identity of the CI.

*II. Testimony about the CI's out-of-court statements*

Defendant next argues that the trial court erred in permitting witnesses to testify about out-of-court statements made by the CI.  We must dismiss this argument because Defendant has again failed to preserve the issue for appellate review.

"'Hearsay' is a statement, other than the one made by the declarant while testifying at trial or hearing offered in evidence to prove the truth of the matter asserted."  N.C. Gen. Stat. § 8C-1, Rule 801(c).  A "[d]efendant cannot assign error to hearsay testimony which he elicited[,]" *State v. Mitchell*, 342 N.C. 797, 806, 467 S.E.2d 416, 421 (1996) (citation omitted), and where a defendant fails to object to hearsay testimony, he is only entitled to plain error review on appeal. *State v. Dyson*, 165 N.C. App. 648, 651, 599 S.E.2d 73, 76 (2004), *disc. review denied*, 359 N.C. 412, 612 S.E.2d 325

(2005). However, where a defendant fails to specifically argue plain error, he waives *any* consideration of the alleged error. *State v. Waring*, 364 N.C. 443, 508, 701 S.E.2d 615, 656 (2010), *cert. denied*, __ U.S. __, 181 L. Ed. 2d 53 (2011).

Here, Defendant identifies five statements which he contends were inadmissible hearsay. However, Defendant elicited three of the statements during his cross-examination of Officer Duft and failed to object to any of the five statements at trial. Defendant further fails to argue plain error in the admission of the statements. Accordingly, we dismiss this argument.

*III. Testimony vouching for the CI's credibility*

Defendant next argues that the trial court committed plain error in permitting law enforcement officers to vouch for the credibility of the CI. We disagree.

When

> an [evidentiary] issue is not preserved in a criminal case, we apply plain error review. We find plain error only in exceptional cases where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done. Thus, the appellate court must study the whole record to determine if the error had such an impact on the guilt determination, therefore constituting plain error. Accordingly, we

> must determine whether the jury would
> probably have reached a different verdict if
> this testimony had not been admitted.

*State v. Hammett*, 361 N.C. 92, 98, 637 S.E.2d 518, 522 (2006) (citations and internal quotation marks omitted; emphasis in original).

"A lay witness is entitled to testify 'in the form of opinions or inferences . . . [which are] (a) rationally based on [his] perception . . . and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.'" *State v. Dew*, __ N.C. App. __, __, 738 S.E.2d 215, 219 (quoting N.C. Gen. Stat. § 8C-1, Rule 701), *disc. review denied*, __ N.C. __, 743 S.E.2d 187 (2013). Under Rule 701, one witness may not "vouch for the veracity of another witness." *State v. Robinson*, 355 N.C. 320, 334, 561 S.E.2d 245, 255, *cert. denied*, 537 U.S. 1006, 154 L. Ed. 2d 404 (2002). However, a law enforcement officer may offer testimony that will assist the jury in understanding his investigative process. *State v. Wallace*, 179 N.C. App. 710, 715, 635 S.E.2d 455, 460 (2006), *disc. review denied and appeal dismissed*, 361 N.C. 436, 649 S.E.2d 896 (2007).

On direct examination, Agent Billings testified as follows:

> Q  For the purposes of this, I will just
> ask you about the prior dealings you had

with [D]efendant and the substance of the deal you witnessed on 12 — start with November 15. What were you doing that day?

A On November 15, 2012, I participated in something we call a buy walk, where we used a confidential source to purchase a small amount of meth[]amphetamines from [Defendant].

Q This CI, had you ever used that person before?

A Yes.

Q About how many times?

A I have known this particular individual about five-and-a-half years in my time here in Charlotte. It's difficult to say, but numerous times on numerous different case[s].

Q The information that you have received from him, were you able ever to corroborate as true?

A Yes. He has been proven to be very truthful.

Q You said on November 15, he set up the deal?

A Yes, at our direction.

Officer Duft also testified about his past work with the CI:

Q Detective Duft, how did you initially come into contact with the CI?

A The CI called the DEA office back in 2007. He just said he was new to the area. He was familiar with drug trafficking and

drug traffickers, and he was interested in providing information.

Q    Have you worked with him consistently since 2007?

A    I have worked with him since 2007.

Q    Approximately how many times have you used him since then?

A    I would say in the range of 20 different times on cases.  I would say 10 to 20 cases.  We are in contact with him almost weekly.

Q    Has he been a reliable informant for you?

A    Yes, he has.

The testimony of both officers was largely in the context of explaining the course of the investigative process which led to Defendant's arrest.  Even assuming *arguendo* that any portion of the above-quoted testimony was impermissible vouching, we cannot conclude that the passing references to the CI as "reliable" and "truthful" likely altered the outcome of Defendant's trial.  In *Dew*, we concluded that a defendant had failed to establish plain error where a mother testified that she believed her daughters when they told her the defendant had sexually abused them.  __ N.C. App. at __, 738 S.E.2d at 219 ("Simply put, in view of . . . the fact that most jurors are likely to assume that a mother will believe accusations of sexual abuse made by her own

children, we cannot conclude that the challenged portion of [the mother]'s testimony had any significant impact on the jury's decision to convict [the d]efendant."). Similarly, here, it is likely most jurors would assume that law enforcement officers believe in the truthfulness and reliability of their confidential informants, since officers would plainly not pursue investigations with informants they did not trust. This argument is overruled.

*IV. Evidence of the November sales*

Defendant next argues that the trial court erred in admitting evidence of the November sales in violation of Rules of Evidence 403 and 404(b). We disagree.

As our Supreme Court has recently clarified,

> when analyzing rulings applying Rules 404(b) and 403, we conduct distinct inquiries with different standards of review. . . . We review *de novo* the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). We then review the trial court's Rule 403 determination for abuse of discretion.

*State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012) (italics added). Rule 404(b) provides that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof

of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident. We have characterized Rule 404(b) as a general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.

*State v. Carpenter*, 361 N.C. 382, 386, 646 S.E.2d 105, 109 (2007) (citations and internal quotation marks omitted; emphasis in original). This general rule of inclusion

is constrained by the requirements of similarity and temporal proximity. This Court has stated that remoteness in time is less significant when the prior conduct is used to show intent, motive, knowledge, or lack of accident; remoteness in time generally affects only the weight to be given such evidence, not its admissibility. Nevertheless, we note that the two offenses in the case at bar are separated by eight years. Moreover, as to the similarity component, evidence of a prior bad act must constitute substantial evidence tending to support a reasonable finding by the jury that the defendant committed a *similar* act. Under Rule 404(b) a prior act or crime is similar if there are some unusual facts present in both crimes. Finally, if the propounder of the evidence is able to establish that a prior bad act is both relevant and meets the requirements of Rule 404(b), the trial court must balance the danger of undue prejudice against the probative value of the evidence, pursuant to Rule 403.

*Id.* at 388-89, 646 S.E.2d at 110 (citations, internal quotation marks, and brackets omitted; emphasis in original).

At trial, Defendant objected under Rule 404(b) to the admission of evidence about the November sales of methamphetamine by Defendant to the CI.[1] The trial court overruled Defendant's objection and admitted evidence of the November sales to show that Defendant had the knowledge and intent to traffic methamphetamine. The court also issued a limiting instruction, specifically directing the jury that the evidence of the November sales "was received solely for the purpose of showing the intent and knowledge that might be necessary as an element in the crimes that are charged in this case. Also, that [D]efendant may have had in his mind a plan, scheme, system, or design involving the crimes that are charged in this case."

On appeal, Defendant contends that the November sales were not sufficiently similar and were too remote in time because the sales took place over three weeks, different amounts of methamphetamine were sold, Defendant drove a different car for one of the November sales, the sales took place in different

---

[1] Defendant was not charged in connection with the November sales.

locations, and Defendant was accompanied by different people for each sale. However, the sales all involved the same drug sold at the same price, Defendant used the same phone to set up the sales, the sales were concluded in the same apartment parking lot, and all sales were between Defendant and the same confidential informant. These similarities are greater than those present in *State v. Houston*, 169 N.C. App. 367, 610 S.E.2d 777, *disc. review denied and appeal dismissed*, 359 N.C. 639, 617 S.E.2d 281 (2005), the case on which the trial court relied in admitting the evidence of the November sales. In *Houston*, the defendant was charged with trafficking cocaine by possession, and the State sought to introduce evidence of previous uncharged drug sales by the defendant to an informant. *Id.* at 372, 610 S.E.2d at 781. We held the prior sales were admissible under Rule 404(b) because the prior sales also involved the defendant and the informant, primarily included the sale of cocaine at the same price, mainly occurred in the same location, were for the same amount of drugs, and the final prior sale had taken place within the preceding four months. *Id.* at 373, 610 S.E.2d at 782. Here, although the amounts of methamphetamine increased with each sale by Defendant, *every* sale involved the same drug and occurred within a much shorter timeframe, to wit, three

weeks. Accordingly, as in *Houston*, we conclude that the prior sales were sufficiently similar and not too remote in time to show Defendant's knowledge and intent to sell methamphetamine.

Rule 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403. "Necessarily, evidence which is probative in the State's case will have a prejudicial effect on the defendant; the question, then, is one of degree." *State v. Mercer*, 317 N.C. 87, 93-94, 343 S.E.2d 885, 889 (1986). "The exclusion of evidence under Rule 403 is a matter generally left to the sound discretion of the trial court, which is left undisturbed unless the trial court's ruling is manifestly unsupported by reason or is so arbitrary it could not have been the result of a reasoned decision." *State v. Badgett*, 361 N.C. 234, 244-45, 644 S.E.2d 206, 212-13 (citation and internal quotation marks omitted), *cert. denied*, 552 U.S. 997, 169 L. Ed. 2d 351 (2007). Further, our Supreme Court has repeatedly held that the admission of prior bad acts is not unfairly prejudicial under Rule 403 in cases where the trial court gave a specific

limiting instruction regarding permissible uses of Rule 404(b) evidence. *See, e.g., id.; see also State v. Hyatt*, 355 N.C. 642, 662, 566 S.E.2d 61, 74-75 (2002), *cert. denied*, 537 U.S. 1133, 154 L. Ed. 2d 823 (2003); *State v. Lemons*, 348 N.C. 335, 353, 501 S.E.2d 309, 320 (1998), *vacated and remanded on other grounds*, 527 U.S. 1018, 144 L. Ed. 2d 768 (1999).

On appeal, Defendant contends that admission of the November sales was unfairly prejudicial because it led the jury to believe a statement the CI made to the police "that Defendant bragged about his access to large quantities of meth[amphetamine]." We believe the trial court's specific instruction to the jury that evidence of the November sales could be considered only to the extent it shed light on Defendant's "intent[,] knowledge[,] . . . . plan, scheme, system, or design" in committing the crimes for which he was charged effectively blunted any possibility of undue prejudice. Juries are presumed to follow instructions by our trial courts. *State v. Tirado*, 358 N.C. 551, 581, 599 S.E.2d 515, 535 (2004) (citation omitted), *cert. denied sub nom. Queen v. North Carolina*, 544 U.S. 909, 161 L. Ed. 2d 285 (2005). We conclude that the trial court's decision to admit evidence of the November sales was not "manifestly unsupported by reason or . .

. so arbitrary it could not have been the result of a reasoned decision." *Badgett*, 361 N.C. at 245, 644 S.E.2d at 212-13. Accordingly, we overrule this argument.

*V. Evidence from video and audiotapes*

Defendant finally argues that the trial court erred in admitting video and audiotape evidence. We disagree.

Defendant failed to object to admission of the recordings he challenges on appeal, with the exception of one videotape. As for the other videotapes and all of the audiotapes, Defendant's failure to object at trial limits him to plain error review regarding the unchallenged recordings. *See* N.C.R. App. P. 10(a)(4). However, Defendant has failed to argue plain error in the admission of those recordings and thus has waived any appellate review. *See Waring*, 364 N.C. at 508, 701 S.E.2d at 656. Accordingly, we consider Defendant's argument on appeal only as to the one videotape to which he objected at trial, State's exhibit 1.

> The prerequisite that the offeror lay a proper foundation for the videotape can be met by: (1) testimony that the motion picture or videotape fairly and accurately illustrates the events filmed, (2) proper testimony concerning the checking and operation of the video camera and the chain of evidence concerning the videotape, (3) testimony that the [videotapes] introduced at trial were the same as those the witness

had inspected immediately after processing, *or* (4) testimony that the videotape had not been edited, and that the picture fairly and accurately recorded the actual appearance of the area photographed.

*State v. Cannon*, 92 N.C. App. 246, 254, 374 S.E.2d 604, 608-09 (1988) (citations, internal quotation marks, and ellipsis omitted; emphasis added), *reversed on other grounds*, 326 N.C. 37, 387 S.E.2d 450 (1990).

Exhibit 1 is a videotape of a meeting between the CI and Defendant in the parking lot of Compare Foods, a grocery store. At trial, the State sought to introduce the recording during Officer Duft's direct examination. Defendant objected, stating "Objection; lack of foundation, who played the video and whether or not [Officer Duft] actually saw what was shown on the video at the time." The court sustained the objection, and the State then elicited the following testimony from Officer Duft:

Q  Detective Duft, were you present when this video was filmed?

A  I was.

Q  Were you at the same vantage point when this individual was being filmed?

A  The video was shot in the parking lot of the Compare Foods. I was in the same parking lot.

Q  How close do you estimate that you were next to the person who was filming this video?

A  The same distance, from me to this wall. Different angles, but seeing the same thing.

Q  Have you reviewed this video yourself?

A  I did.

Q  Is it a fair and accurate representation of the scene that you saw on December 3 at the Compare Foods?

A  It is.

This testimony from Officer Duft indicates that "the videotape fairly and accurately illustrated the events filmed" and thus provided a proper foundation under *Cannon*. *See id.* Defendant contends that the State was also required to provide evidence about the maintenance and functioning of the video camera. However, the four methods listed in *Cannon* are joined with the disjunctive "or" plainly indicating that any one of the methods will suffice to establish a proper foundation for the admission of videotape evidence. *See id.; see, e.g., State v. Ayscue*, 169 N.C. App. 548, 610 S.E.2d 389 (2005) (concluding that a videotape was properly admitted based on testimony solely regarding chain of custody, the second method listed in *Cannon*). Here, a proper foundation was laid for admission of the videotape, and we see no error in the trial court's admission of it. Accordingly, this argument is overruled.

DISMISSED in part; NO ERROR in part; NO PREJUDICIAL ERROR in part.

Judges CALABRIA and ELMORE concur.

Report per Rule 30(e).