STATE OF NORTH CAROLINA v. ROBERT EARL BUNNING, A/K/A ROBERT EARL GARRIS

No. 403A92

(Filed 9 December 1994)

1. **Criminal Law § 762 (NCI4th)—first-degree murder— instructions—reasonable doubt—moral certainty—no error**

The trial court did not err in a first-degree murder prosecution by giving an instruction on reasonable doubt which included moral certainty. *State v. Bryant*, 334 N.C. 333, was reversed on remand from the U.S. Supreme Court, and, pursuant to the second *State v. Bryant*, 337 N.C. 298, the charge in this case was not in error.

**Am Jur 2d, Trial § 1385.**

2. **Criminal Law § 439 (NCI4th)— first-degree murder—prosecutor's argument—credibility of prosecutor and State's witnesses**

The trial court did not err in a first-degree murder prosecution by not intervening *ex mero motu* to stop a prosecution argument which defendant contended concerned his credibility and that of the State's witnesses. The statements by the prosecuting attorney were more in the nature of giving reasons for the jury to believe the State's evidence than vouching for his own credibility or that of his witnesses.

**Am Jur 2d, Trial §§ 681, 682, 692 et seq.**

**Negative characterization or description of defendant, by prosecutor during summation of criminal trial, as ground for reversal, new trial, or mistrial—modern cases. 88 ALR4th 8.**

**Propriety and prejudicial effect of counsel's negative characterization or description of witness during summation of criminal trial—modern cases. 88 ALR4th 209.**

3. **Criminal Law § 438 (NCI4th)— first-degree murder—prosecutor's argument—defendant not truthful**

The trial court did not err in a first-degree murder prosecution by not intervening *ex mero motu* to stop a prosecution argument in which defendant contended that the prosecutor called

him a liar. The prosecutor did not call defendant a liar, but asked the jury to conclude that defendant was lying because he had not told the truth on several occasions, and there was evidence from which the jury could find that defendant had not told the truth at trial.

**Am Jur 2d, Trial §§ 681, 682.**

**Negative characterization or description of defendant, by prosecutor during summation of criminal trial, as ground for reversal, new trial, or mistrial—modern cases. 88ALR4th 8.**

4. **Criminal Law § 442 (NCI4th)— first-degree murder—prosecutor's argument—biblical reference—improper but not prejudicial**

A prosecutor's argument in a first-degree murder prosecution that the jurors would be blessed by God if they found defendant guilty was not approved, but was not so egregious that the court should have intervened *ex mero motu.*

**Am Jur 2d, Trial § 567.**

**Supreme Court's views as to what courtroom statements made by prosecuting attorney during criminal trial violate due process or constitute denial of fair trial. 40 L. Ed. 2d 886.**

5. **Jury § 127 (NCI4th)— first-degree murder—jury selection—classes in psychology and psychiatry**

The trial court did not err during jury selection for a first-degree murder prosecution by sustaining an objection to defendant's question as to whether any of the jurors had taken classes in psychology and psychiatry. The court indicated that it would not allow the answer based on what the prospective juror had learned in college; this should have allowed defendant to question the prospective juror about his feelings in regard to psychiatrists and psychologists without reference to college courses.

**Am Jur 2d, Jury §§ 201, 202.**

6. **Jury § 148 (NCI4th)— first-degree murder—jury selection—question regarding death penalty forbidden—no prejudice**

There was no prejudicial error in a first-degree murder prosecution where the trial court forbade defendant from asking a

prospective juror whether he or she could think of circumstances under which he or she would not impose the death penalty. Not allowing the question was error, but was not prejudical because defendant peremptorily challenged the prospective jurors to whom the question was addressed and was allowed to ask the other jurors whether they would automatically vote for the death penalty and whether they would vote for life if they felt the evidence did not warrant death.

**Am Jur 2d, Jury §§ 201, 202.**

**7. Jury § 145 (NCI4th)— first-degree murder—jury selection—death penalty—statement by court**

The trial court did not err in a first-degree murder prosecution by making statements which defendant says diminished the responsibility of each individual member of the jury to make an individual decision but the court was correcting an impression which could have been left by defendant's question that a prospective juror alone had to determine defendant's fate.

**Am Jur 2d, Trial §§ 276 et seq.**

**8. Evidence and Witnesses § 760 (NCI4th)— first-degree murder—effect of deceased's alcohol level excluded—no prejudicial error**

There was no prejudicial error in a first-degree murder prosecution where a psychologist was not allowed to testify that a person with the deceased's blood alcohol level would be more irritable and more prone to act on emotions where there was testimony that the deceased was a violent man and wild when drinking. Defendant was able to present stronger evidence of· the deceased's violent nature than the testimony of the psychologist.

**Am Jur 2d, Appeal and Error § 806.**

**9. Homicide § 612 (NCI4th)— first-degree murder—self-defense—instructions—deceased's hands as deadly weapons**

The trial court did not err in a first-degree murder prosecution by not instructing the jury that they could find that decedent's hands were a deadly weapon. It may be assumed that the jury knew that a person could kill by choking another person and could have properly determined under the charge given whether

STATE v. BUNNING

[338 N.C. 483 (1994)]

the defendant was under such assault as would justify taking the life of decedent.

**Am Jur 2d, Homicide § 498.**

**10. Criminal Law § 1336 (NCI4th)— first-degree murder—sentencing—aggravating circumstance—prior capital felony**

The trial court erred during a first-degree murder sentencing hearing by submitting to the jury the aggravating circumstance that defendant had previously been convicted of another capital felony when defendant had pleaded guilty to first-degree murder in Virginia in 1973 and Virginia's death penalty had been held unconstitutional in 1972. The North Carolina General Assembly, when it defined death penalty, meant a crime for which defendant could have received the death penalty. Defendant could not have received the death penalty for the crime to which he pled guilty in Virginia. N.C.G.S. § 15A-2000(e)(2).

**Am Jur 2d, Criminal Law §§ 598, 599.**

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Rousseau, J., at the 19 October 1992 Criminal Session of Superior Court, Guilford County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 12 April 1994.

The defendant was tried for the first-degree murder of Maurice Rupert Brooks. The State's evidence, including the testimony of an eyewitness, showed that after the conclusion of a card game the defendant, without provocation, shot and killed Mr. Brooks with a single shot from a .25 caliber pistol. A blood test revealed that Mr. Brooks had a blood alcohol level of .35 at the time of his death.

The defendant testified in his own behalf that during an argument between him and Mr. Brooks, Mr. Brooks grabbed him by the throat and choked him. He felt threatened and shot Mr. Brooks. The defendant testified on cross-examination that his legal name was Robert Earl Garris.

The jury found the defendant guilty of first-degree murder. After a sentencing hearing, the jury found one aggravating circumstance,

that the defendant had previously been convicted of another capital felony. The jury found six mitigating circumstances. The jury found that the mitigating circumstances did not outweigh the single aggravating circumstance and that the aggravating circumstance considered with the mitigating circumstances was sufficiently substantial to call for the imposition of the death penalty. The jury recommended the death penalty and this sentence was imposed.

The defendant appealed.

*Michael F. Easley, Attorney General, by Barry S. McNeill, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, for defendant-appellant.*

WEBB, Justice.

[1] The defendant's first assignment of error deals with the charge. The court charged the jury on reasonable doubt as follows:

> Now, a reasonable doubt is not a vain, imaginary or fanciful doubt, but it's a sane and rational doubt. It's a doubt based on common sense. When it's said that you, the jury, must be satisfied of the defendant's guilt beyond a reasonable doubt, it is meant that you must be fully satisfied or completely satisfied or satisfied to a moral certainty of the truth of the charge. If, after considering, comparing and weighing the evidence or lack of evidence, the minds of the jury are left in such condition that you cannot say that you have an abiding faith to a moral certainty in the defendant's guilt, then you have a reasonable doubt. Otherwise not.

The defendant says this charge is indistinguishable from the charge given in *State v. Bryant*, 334 N.C. 333, 432 S.E.2d 291 (1993), *judgment vacated*, 114 U.S. 1365, 128 L. Ed. 2d 42, *on remand*, 337 N.C. 298, 446 S.E.2d 71 (1994), which we found violated the defendant's right to due process of law under *Cage v. Louisiana*, 498 U.S. 39, 112 L. Ed. 2d 339 (1991). After our decision in *Bryant*, the United States Supreme Court in *Victor v. Nebraska*, 511 U.S. ——, 127 L. Ed. 2d 583 (1994), held that if words which we found offensive in *Bryant* were used in conjunction with other words which showed the court did not lessen the burden of proof beyond a reasonable doubt, the charge is not erroneous. On remand from the United States Supreme Court, we reversed *Bryant* and held that the charge was not erroneous. *See also State v. Moseley*, 336 N.C. 710, 445 S.E.2d 906

(1994) and *State v. Jones*, 336 N.C. 490, 445 S.E.2d 23 (1994). We hold, pursuant to our second opinion in *Bryant*, that the charge in this case was not in error.

This assignment of error is overruled.

**[2]** The defendant next contends it was error for the court not to intervene *ex mero motu* to stop certain parts of the argument the prosecuting attorney made to the jury. The defendant did not object to any of these arguments and unless they were so grossly improper that they denied the defendant due process of law, we cannot hold they were erroneous. *State v. Brown*, 320 N.C. 179, 358 S.E.2d 1, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987).

The defendant first says that the prosecuting attorney improperly vouched for his own credibility and the credibility of the State's witnesses. *See State v. Britt*, 288 N.C. 699, 220 S.E.2d 283 (1975) and *State v. Smith*, 279 N.C. 163, 181 S.E.2d 458 (1971). The defendant argues that the following excerpts from the prosecuting attorney's argument demonstrate this error:

> And if you believe that I have misled you, or that I'm going to mislead you, or that these detectives, Detective Whitt and Detective Rooker, put words in David Jones' mouth, if you believe any of those things, that the State has tried to mislead you, just go ahead and turn this gun-toting killer loose, who happens to have this loaded handgun in his rear pocket.
>
> . . . .
>
> And I contend to you, ladies and gentlemen, that I'm not going to . . . mislead you about anything. . . . [I]f you think that we've misled you . . . then turn him loose.
>
> . . . .
>
> If I was going to mislead you, I wouldn't put up every single officer that was involved in the case, all the SBI agents. You wouldn't have heard from them.
>
> . . . .
>
> But I say and contend to you that this fine detective, this professional law-enforcement officer, isn't going to make up some statement for David Michael Jones, just to convict Robert Bunning.
>
> . . . .

Either this statement was David Michael Jones' statement . . . or this police detective with his 19 years and one month of experience . . . made it up. . . . And I contend to you that Detective J. Whitt isn't going to put his reputation and his career on the line. . . .

These statements by the prosecuting attorney were more in the nature of giving reason why the jury should believe the State's evidence than that the prosecuting attorney was vouching for the credibility of the State's witnesses or for his own credibility. At its worst, the prosecuting attorney's argument was not so egregious as to require the court to intervene *ex mero motu*.

[3] The defendant next says the prosecuting attorney called him a liar. He bases this argument on the following portions of the prosecuting attorney's argument:

> You know, I contend to you . . . that a man that'll lie about his name and lie about as many things as he has, and given as many names as he has, will lie about anything.

> . . . .

> And I contend to you that a person that'll lie about their name will lie about anything.

A prosecuting attorney in his argument to the jury should not call a defendant a liar. *State v. Miller*, 271 N.C. 646, 659, 157 S.E.2d 335, 346 (1967). In this case, the prosecuting attorney did not call the defendant a liar. He asked the jury to conclude the defendant was lying because he had lied about his name and other things. There was evidence that the defendant had used several aliases and had used his dead brother's social security card to obtain food stamps. This was evidence from which the prosecuting attorney could argue that the defendant had not told the truth on several occasions and the jury could find from this that he had not told the truth at his trial.

[4] The defendant next argues that the prosecuting attorney made an improper argument in quoting from the Bible. The prosecuting attorney said:

> I want to quote to you from Proverbs, because the Lord tells us in Proverbs that "[i]t will go well with those who convict the guilty, and great blessing come upon them."

While we have said that Biblical references should not be used in arguments to the jury, we have allowed considerable latitude in such arguments without holding it to be reversible error. *State v. Artis*, 325 N.C. 278, 331, 384 S.E.2d 470, 500 (1989). We have said it is particularly egregious to argue that the law is divinely inspired. *State v. Oliver*, 309 N.C. 326, 359, 307 S.E.2d 304, 326 (1983), or that law officers are ordained by God. *State v. Moose*, 310 N.C. 482, 501, 313 S.E.2d 507, 519 (1984). The Biblical quotation used by the prosecuting attorney implied to the jurors that if the defendant was guilty and they convicted him they would be blessed by God. We do not approve of this argument, but we believe the jurors were properly able to discount the prosecuting attorney's promise. We do not believe the defendant was prejudiced by it. It was not so egregious that the court should have intervened *ex mero motu*.

This assignment of error is overruled.

[5] The defendant under his next assignment of error argues three different questions. He first says it was error to sustain an objection to a question asked while the jury was being selected. The defendant asked of all the jurors whether any of them had taken classes in psychology and psychiatry. Several of the potential jurors raised their hands and the defendant then asked, "[d]id you form any impressions about the science of psychiatry or psychology in taking that course?" The court sustained the State's objection to this question, saying, "[w]ell, now, we're not going into all of that. . . . I wouldn't want to be quizzed on what I studied in college."

The defendant says it was error to sustain the objection to this question because a potential juror's impression of psychiatry and psychology that may have been formed by earlier experiences is relevant to test whether the juror would be able to fairly assess and give proper weight to psychiatric and psychological evidence offered in mitigation. We do not find reversible error in the sustaining of the objection. In ruling on this question, the court indicated it would not allow the answer based on what the prospective juror had learned in college. This should have allowed the defendant to question the prospective juror about his feelings in regard to psychiatrists and psychologists without reference to college courses. The defendant did not ask such a question and we do not know what the court's ruling would have been had such a question been asked.

**[6]** The defendant next says it was error for the court to *sua sponte* forbid the defendant from asking a prospective juror the following question:

> Can you think of circumstances under which you would not impose the death penalty, for an individual convicted of premeditated murder?

This question was designed to ferret out those potential jurors who would impose the death penalty without regard to mitigating circumstances. It was error pursuant to *Morgan v. Illinois*, 504 U.S. ——, 119 L. Ed. 2d 492 (1992), not to allow it. However, it was not reversible error. The defendant peremptorily challenged the prospective jurors to whom the objection was addressed. As to other jurors, the defendant was allowed to ask whether they would automatically vote for the death penalty if the defendant should be convicted of first-degree murder. He was also allowed to ask if they would vote for life if they felt the evidence did not warrant the death penalty. The defendant should have been able from these questions to intelligently exercise his challenges.

**[7]** The defendant finally says under this assignment of error that a statement made by the court during *voir dire* constituted reversible error. During jury *voir dire* the defendant's attorney asked the following question:

> But do you understand that no matter what the evidence shows in the case, the decision about whether or not to impose the death penalty, should it get to that point, is yours and yours alone?

The court then intervened and said:

> Well, it's the jury, not necessarily hers.

The court later instructed the jury as follows:

> Members of the jury, the jury sits together and render your verdict [sic], after listening to everyone talk, and make your verdict that way.

The defendant says these two statements by the court diminished the responsibility of each individual member of the jury to make an independent decision. The question asked by the defendant could have led the prospective juror to believe she alone had to determine the fate of the defendant. The court corrected this impression. We find no error in the statements of the court.

This assignment of error is overruled.

[8] The defendant next assigns error to the exclusion of testimony by a clinical psychologist. The evidence showed that the deceased had a blood alcohol content of .35 at the time he was killed. If she had been allowed to testify, the psychologist would have said that a person with a blood alcohol level of .35 would be "extremely inebriated" and that the "disinhibit[ing]" effect of alcohol "makes a person more irritable, more prone to act out and more prone to act on any emotions that they have at the time." The defendant contends this testimony was relevant as some evidence that the deceased was the aggressor in the fight and it was error to exclude it. *State v. McElrath*, 322 N.C. 1, 366 S.E.2d 442 (1988).

Assuming this testimony should have been admitted, we hold the defendant was not prejudiced by its exclusion. The witness did not relate her testimony to the deceased. There was evidence that the blood alcohol content of the decedent was .35 percent. A witness testified for the defendant that the deceased was a violent man and when he was drinking was "kind of wild." The defendant was able to present stronger evidence of the deceased's violent nature than the testimony of the psychologist would have been. The defendant was not prejudiced by its exclusion.

This assignment of error is overruled.

[9] The defendant next assigns error to the court's failure to charge that the jury could find that the decedent's hands were a deadly weapon. The defendant requested that in charging on self-defense, the court instruct the jury that it could find that the decedent was choking or attempting to choke the defendant and that the decedent's hands were being used as a deadly weapon. The defendant relies on two cases decided by the Court of Appeals which hold that under certain circumstances the hands and fists can be deadly weapons to support convictions of assault with a deadly weapon. *State v. Grumbles*, 104 N.C. App. 766, 411 S.E.2d 407 (1991); *State v. Jacobs*, 61 N.C. App. 610, 301 S.E.2d 429 (1983).

The defendant does not otherwise take exception to the charge on self-defense. We must assume that the jury knew that depending on the circumstances a person could kill by choking another person to death. It could have properly determined under the charge given by the court whether the defendant was under such assault as would justify his taking the life of the decedent. It was not necessary to tell the

jury that it could find that the decedent's hands were a deadly weapon in order to do so.

This assignment of error is overruled.

We find no error in the guilt-innocence phase of the trial.

## Sentencing Hearing

[10] One aggravating circumstance was submitted to the jury at the sentencing hearing which was N.C.G.S. § 15A-2000(e)(2), "[t]he defendant had been previously convicted of another capital felony." N.C.G.S. § 15A-2000(a)(1) says, "[a] capital felony is one which may be punishable by death."

To support the finding of this aggravating circumstance, the State introduced evidence that the defendant had pleaded guilty to a charge of first-degree murder in the Circuit Court of the City of Chesapeake, Virginia, on 15 February 1973, and was sentenced to twenty years in prison. On 9 August 1972, the Supreme Court of Virginia held that the part of the statute of that State which provided for the death penalty was unconstitutional. *Huggins v. Commonwealth*, 213 Va. 327, 191 S.E.2d 734 (1972). There was no death penalty in Virginia at the time the defendant pled guilty to first-degree murder.

The crime to which the defendant pled guilty in Virginia was not punishable by death and was not a capital felony as defined in N.C.G.S. § 15A-2000(a)(1). The State's evidence did not support the finding of the aggravating circumstance that the defendant had previously been convicted of another capital felony. There must be a new capital sentencing proceeding.

The State argues that the defendant did not object to the charge of the court when it was explained to the jury how it would find this aggravating circumstance and pursuant to N.C. Rules of Appellate Procedure, Rule 10(b)(2) the defendant cannot appeal from this charge. The defendant does not assign error to the language of the charge. He assigns error to the submission of this aggravating circumstance to the jury. He preserved his exception to the submission of this aggravating circumstance by objecting to it on several occasions. He appeals pursuant to N.C. Rules of Appellate Procedure, Rule 10(b)(1).

The State argues that the defendant pled guilty to a crime in Virginia which is a capital felony in North Carolina and the aggravating circumstance was properly submitted. We hold that the General

Assembly, when it defined capital felony, meant a crime for which the defendant could receive the death penalty. The defendant could not have received the death penalty for the crime to which he pled guilty in Virginia. He did not plead guilty to a capital felony.

For the error in finding the aggravating circumstance, the defendant must have a new capital sentencing proceeding.

IN THE GUILT PHASE: NO ERROR.

IN THE PENALTY PHASE: NEW CAPITAL SENTENCING PROCEEDING.