STATE OF NORTH CAROLINA v. LEVERNE BURRUS

No. 183A95

(Filed 31 July 1996)

**1. Jury § 110 (NCI4th)— first-degree murder—jury selection—individual voir dire denied**

The trial court did not abuse its discretion in a prosecution arising from a murder and robbery by denying defendant's motion for individual voir dire of prospective jurors where three prospective jurors made statements that they were predisposed to convict defendant, there is no indication that any other juror was influenced by their comments and all three were summarily dismissed or excused for cause.

**Am Jur 2d, Jury § 198.**

**2. Jury § 115 (NCI4th)— first-degree murder—jury selection—rehabilitation of certain jurors denied—speculation as to rehabilitation—no error**

There was no abuse of discretion in a first-degree murder prosecution in not allowing defendant to rehabilitate certain prospective jurors where defendant, at most, speculated that by further examination he might have rehabilitated the jurors.

**Am Jur 2d, Jury §§ 201, 202.**

**3. Criminal Law § 76 (NCI4th)— first-degree murder—change of venue denied—no error**

The trial court did not abuse its discretion in a first-degree murder prosecution by denying defendant's motion for a change of venue based on pretrial publicity where the trial court stated, after ten jurors had been selected, that only one had indicated that he had some opinion at a former time and that the rest did not have an opinion, and several had expressed only the vaguest knowledge of the case. Moreover, defense counsel expressly admitted in his argument to the trial court that his motion was not based on pretrial publicity. Defendant failed to identify a single juror objectionable to him who sat on the jury and did not carry his burden of showing a specific and identifiable prejudice requiring a change of venue.

**Am Jur 2d, Criminal Law §§ 361 et seq.**

**Pretrial publicity in criminal case as ground for change of venue. 33 ALR3d 17.**

**Change of venue by state in criminal case. 46 ALR3d 295.**

4. **Jury § 203 (NCI4th)— first-degree murder—jury selection—former deputy sheriff—prior discussions of case—challenge for cause denied**

The trial court did not err during jury selection for a first-degree murder prosecution by denying defendant's motion to excuse a prospective juror for cause where the juror stated that he was a former deputy sheriff, that he had discussed the case on several occasions, and that if one fact he was aware of became an aspect in the case it would have a strong impact on him and substantially impair his ability to make a fair and impartial decision, but upon further questioning stated clearly and unequivocally that he could put out of his mind what he had heard before and decide the case solely on what he heard in the courtroom.

**Am Jur 2d, Jury §§ 289, 291-294, 308.**

**Former law enforcement officers as qualified jurors in criminal cases. 72 ALR3d 958.**

5. **Evidence and Witnesses § 2817 (NCI4th)— first-degree murder—leading questions—directing attention toward matter being addressed**

The trial court did not err in a first-degree murder prosecution in allowing the State to ask questions which defendant contends were leading. Defendant did not object at trial to the majority of the questions; reviewed under the plain error standard with the overwhelming evidence against defendant, it cannot reasonably be believed that the questions resulted in error so fundamental that justice cannot have been done. The two questions to which defendant objected at trial merely directed the witness toward the specific matter being addressed without suggesting the desired answer. However, assuming that the questions were leading, there was no abuse of discretion in allowing the questions to be asked and answered.

**Am Jur 2d, Witnesses §§ 752-756.**

6. **Evidence and Witnesses § 850 (NCI4th)— first-degree murder—testimony not hearsay—not prejudicial**

The trial court did not err in a first-degree murder prosecution by overruling objections to testimony which defendant con-

STATE v. BURRUS

[344 N.C. 79 (1996)]

tended was impermissible hearsay. The specific statements complained of either were not hearsay or were admissible under a recognized exception to the hearsay rule. Furthermore, even assuming that any statements were hearsay and not admissible under any recognizable exception, admission of the statements was harmless error because they could not have influenced the jury's decision.

**Am Jur 2d, Evidence §§ 668-703; Homicide §§ 329 et seq.**

7. **Evidence and Witnesses § 1242 (NCI4th)— first-degree murder—voluntarily showing officers the murder weapon—in custody—warnings given—no error**

The trial court did not err in a first-degree murder prosecution by denying defendant's motion to suppress his inculpatory statement where an SBI agent and a deputy sheriff spoke with defendant at his home while defendant was under arrest; defendant was advised of his *Miranda* rights and indicated that he understood those rights; defendant subsequently indicated during questioning that he thought he could show the officers where the gun was located and agreed to do so; defendant appeared to be in control of his faculties and did not appear to be under the influence of any substance; no threats, promises, or other coercion or inducements were made to defendant; the sheriff testified that he was sitting on the porch when the deputy came out and told him that defendant was volunteering to locate the gun; defendant was not then handcuffed, was not questioned in the vehicle, and appeared to be acting voluntarily; and the sheriff stopped the car when defendant said to pull over. The testimony shows that defendant was fully informed of his rights, that he understood them, and that he voluntarily accompanied the sheriff to locate the gun.

**Am Jur 2d, Criminal Law §§ 785, 788 et seq.; Evidence §§ 643, 644.**

8. **Evidence and Witnesses § 1356 (NCI4th)— first-degree murder—inculpatory statements—electronic recording not required**

There was no error in a first-degree murder prosecution in the admission of inculpatory statements which were not electronically recorded. The North Carolina Supreme Court has ruled

against requiring the recordation of in-custody interrogation; thus, there is no presumption in North Carolina against the admissibility of statements obtained during in-custody interrogations.

**Am Jur 2d, Evidence § 718.**

**9. Homicide § 230 (NCI4th)— first-degree murder—evidence sufficient**

The trial court did not err in a first-degree murder prosecution by denying defendant's motions to dismiss and for a directed verdict based on insufficient evidence. There was overwhelming evidence of defendant's guilt; two of three accomplices provided detailed eyewitness testimony, various witnesses placed the murder weapon in defendant's hand during and after the killings, scientific evidence showed conclusively that the bullets recovered from the bodies were fired from that weapon, and long-time friends of defendant testified that defendant confessed to them that he had committed the murders.

**Am Jur 2d, Homicide §§ 425 et seq.**

**10. Criminal Law § 439 (NCI4th)— first-degree murder—prosecutor's argument—credibility of State's witnesses**

There was no gross impropriety in a first-degree murder prosecution where the trial court did not intervene *ex mero motu* during the prosecutor's closing argument regarding the credibility of the State's witnesses. The comments were more in the nature of giving the jury reason to believe the State's evidence than vouching for the credibility of the State's witnesses.

**Am Jur 2d, Trial §§ 692-704.**

**Propriety and prejudicial effect of comments by counsel vouching for credibility of witness—state cases. 45 ALR4th 602.**

**11. Criminal Law § 460 (NCI4th)— first-degree murder—prosecutor's argument—permissible inferences**

There was no gross impropriety in a first-degree murder prosecution where the prosecutor in his argument commented that an accomplice who testified against defendant had not attempted to cut a victim's throat with a razor. The pathologist testified that the victim had some scratches on his neck that might have been

caused by a dull tool; it is therefore a permissible inference that the marks were not made by a razor.

**Am Jur 2d, Trial §§ 632-639.**

**12. Criminal Law § 425 (NCI4th)— first-degree murder—prosecutor's argument—defendant's failure to introduce letter**

There was no gross impropriety in a first-degree murder prosecution where the prosecutor argued that a letter would have been read from the witness stand if it was exculpatory. A prosecutor may comment on a defendant's failure to produce exculpatory evidence to contradict or refute evidence presented by the State.

**Am Jur 2d, Trial §§ 605, 606.**

**13. Criminal Law § 461 (NCI4th)— first-degree murder—prosecutor's argument—matters outside record—no prejudice**

There was no gross impropriety in a first-degree murder prosecution where defendant contended that the prosecutor injected matters outside the record in repeating statements about the victims being robbed; however, the jury found defendant not guilty as to the robbery charges and any such comments could not possibly have prejudiced defendant.

**Am Jur 2d, Trial §§ 609 et seq.**

**14. Criminal Law § 465 (NCI4th)— first-degree murder—prosecutor's argument—misstatement of law—no prejudice**

There was no prejudice in a first-degree murder prosecution where defendant complained that the prosecutor misstated the law regarding acting in concert, but the jury rejected that theory and found defendant guilty of murder based on premeditation and deliberation. These comments could not have prejudiced defendant.

**Am Jur 2d, Trial §§ 640 et seq.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing consecutive sentences of life imprisonment entered by Griffin, J., on 21 September 1994 in Superior Court, Hyde County, upon jury verdicts finding defendant guilty of two counts of first-degree murder. Defendant's motion to bypass the Court of Appeals as to his appeal from his conviction for conspiracy to commit robbery

with a dangerous weapon was allowed 8 September 1995. Heard in the Supreme Court on 9 April 1996.

*Michael F. Easley, Attorney General, by Dennis P. Myers, Assistant Attorney General, for the State.*

*Margaret Creasy Ciardella for defendant-appellant.*

MITCHELL, Chief Justice.

On 7 June 1993, defendant Leverne Burrus was indicted for two counts of first-degree murder, one count of conspiracy to commit robbery with a dangerous weapon, and two counts of robbery with a dangerous weapon. Defendant was tried capitally at the 12 September 1994 Criminal Session of Superior Court, Hyde County. The jury found defendant guilty of both counts of first-degree murder on the basis of premeditation and deliberation, guilty of conspiracy to commit robbery, and not guilty of either robbery with a dangerous weapon charge. After a capital sentencing proceeding, the jury recommended sentences of life imprisonment for each of the murder convictions, and the trial court sentenced defendant accordingly. In addition, the trial court imposed a ten-year sentence of imprisonment for the conspiracy to commit robbery conviction, the sentences to run consecutively.

The State's evidence tended to show *inter alia* that the victims, John Darby Wood, Jr., and Steven Swindell, were shot and killed while sitting in Wood's car as it was stopped along a rural road in Hyde County on 28 December 1992.

Gwendolyn Spencer testified that she had entered pleas of guilty to two counts of second-degree murder and one count of armed robbery in connection with these crimes. She further testified that on 28 December 1992, she saw Wood and Swindell at Midgett's Trailer Park. She saw defendant approach Wood's car with a gun in his pants. Defendant talked to Swindell about money and a gun. It appeared that defendant was demanding $300.00 for the return of the gun. Defendant later made comments that he thought Wood was an "undercover." Defendant stated that he would get rid of Wood and devised a plan. As part of the plan, Gwendolyn Spencer and Marsha Gibbs were to search the car. Gwendolyn Spencer, Marsha Gibbs, defendant, and Kerry Spencer drove to Saint Lydia, where they stopped at Kerry Spencer's mother's house to get gloves to be used in the search of the car. As they returned, they saw Wood's car approach

an intersection. They stopped the car, and defendant and Kerry Spencer got out and walked to the passenger side of the car. Gwendolyn Spencer testified that she heard gunshots and saw Steven Swindell open the driver's door, speak to defendant, and then fall out of the car and to the ground. She then saw Kerry Spencer attempt to cut Wood's throat.

Kerry Spencer testified that he had also entered guilty pleas to two counts of second-degree murder and one count of armed robbery. He testified that on 28 December 1992, he saw Wood and Swindell in a brown Toyota. Defendant told Marsha Gibbs, who was driving, to back up. Kerry and defendant got out and walked over to the brown Toyota. A conversation ensued between defendant and Wood, then Kerry heard shots being fired. He saw defendant shooting into the passenger side of the car. Kerry grabbed the gun from defendant, looked at it, and then gave it back to him. The women searched the car. Kerry made cutting motions at Wood's throat with a box cutter, but he did not actually cut him. After the group returned to the trailer park, Kerry heard Gwendolyn Spencer tell Victor Spencer that defendant had shot and killed "those two white guys."

[1] By his first assignment of error, defendant contends that the trial court erred by denying his motion for individual *voir dire* of prospective jurors. Defendant argues that a review of the jury *voir dire* reveals that numerous prejudicial statements were made by some prospective jurors in the presence of the others, which denied his right to be tried by an impartial jury and his right to due process.

Whether to allow a motion for individual *voir dire* is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed absent a showing of an abuse of discretion. *State v. Burke*, 342 N.C. 113, 122, 463 S.E.2d 212, 218 (1995). In this case, defendant points to certain statements made by three of the prospective jurors—Modlin, Clark, and Carlin—as support for his argument that the trial court erred in its ruling.

Although the three prospective jurors in question did make statements indicating that they were predisposed to convict defendant, we find that there was nothing so unusual or outrageous about their comments as to render the jury selection process unfair to defendant. There is no indication that any other juror was influenced by their comments. Furthermore, potential jurors Modlin and Clark were dismissed summarily by the trial court, and the trial court allowed defendant to excuse Carlin for cause. Because defendant has failed to

show an abuse of the trial court's discretion, this assignment of error is overruled.

[2] In a related assignment of error, defendant contends that the trial court erred by failing to give him an opportunity to question certain prospective jurors. Defendant argues that he was not allowed the opportunity to "rehabilitate" certain prospective jurors who stated, for one reason or another, that they would not be able to render a fair and impartial verdict in this case.

"The extent and manner of a party's inquiry into a potential juror's fitness to serve is within the trial court's discretion." *State v. White*, 340 N.C. 264, 280, 457 S.E.2d 841, 850, *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 436 (1995). Defendant here has failed to show that the trial court abused its discretion in not allowing him to question prospective jurors. At most, defendant speculates that by further examination of a prospective juror, he might possibly have "rehabilitated" that juror to the point that the court would not have summarily dismissed him. Accordingly, this assignment of error is overruled.

[3] By another assignment of error, defendant contends that the trial court erred in denying his motion for a change of venue. Defendant argues that his motion should have been granted because of the extensive publicity this case received and the fact that a large number of prospective jurors had formed an opinion about the guilt or innocence of defendant.

The test for determining whether a change of venue should be granted is whether "there is a reasonable likelihood that the defendant will not receive a fair trial." *State v. Jerrett*, 309 N.C. 239, 254, 307 S.E.2d 339, 347 (1983). The burden is on the defendant to show a reasonable likelihood that the prospective jurors will base their decision in the case upon pretrial information rather than the evidence presented at trial and will be unable to remove from their minds any preconceived impressions they might have formed. *Id.* at 255, 307 S.E.2d at 347. This determination rests within the trial court's sound discretion and will not be disturbed on appeal absent a showing of an abuse of discretion. *State v. Alston*, 341 N.C. 198, 225, 461 S.E.2d 687, 701 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 100 (1996).

Furthermore, we have held that for a defendant to meet his burden of showing that pretrial publicity prevented him from receiving a fair trial, he must show that jurors have prior knowledge concerning the case, that he exhausted his peremptory challenges, and that a

juror objectionable to him sat on the jury. *Jerrett*, 309 N.C. at 255, 307 S.E.2d at 347-48. Generally, in determining whether a defendant has met his burden of showing prejudice, it is relevant to consider whether the chosen jurors stated that they could ignore any prior knowledge or earlier held opinions and decide the case solely on the evidence presented at trial. *Id.* "The best and most reliable evidence as to whether existing community prejudice will prevent a fair trial can be drawn from prospective jurors' responses to questions during the jury selection process." *State v. Madric*, 328 N.C. 223, 228, 400 S.E.2d 31, 34 (1991).

After reviewing the record, we conclude that defendant has failed to show that the trial court abused its discretion in denying his motion for a change of venue. During the jury selection process, after ten jurors had been selected, the trial court stated:

You got only one person, Mr. Berry, at this point that indicated former time he had some opinion. As I understand it, the rest of the jurors in the box at this time have been passed haven't had an opinion and don't have one now as I understand it. Several of them expressed only the vaguest knowledge of the case.

We also find it significant that after the jury had been selected, counsel for defendant expressly admitted in his argument to the trial court that his motion was not based on pretrial publicity:

MR. HARRELL: Yes, Sir. The, the motion is not founded or based upon pre-trial publicity. It's based upon comments that were made by individual jurors.

THE COURT: I understand. I want to rule on your motion to change venue, and based upon the fact that I haven't heard anything indicate [sic] these selected jurors would base a decision upon pre-trial information.

MR. HARRELL: Your Honor, quite candidly, I've heard nothing from the sitting jurors that indicates that any pre-trial information would play a part in their decision.

Instead, defendant again relies on his earlier argument that certain statements of prospective jurors elicited during the *voir dire* must have prejudiced the jurors who were actually seated. We have previously addressed those statements and need not do so again here. Because defendant has failed to identify a single juror objectionable to him who sat on the jury, we conclude that he has not carried his

burden of showing specific and identifiable prejudice requiring a change of venue. This assignment of error is overruled.

**[4]** By another assignment of error, defendant contends that the trial court erred in denying his motion to excuse prospective juror Cutler for cause. Defendant argues the prospective juror had indicated that he could not be fair and impartial.

During *voir dire*, Mr. Cutler stated at one point that he was a former deputy sheriff of Hyde County and that he had discussed defendant's case on several occasions. He said if one fact that he was aware of became an aspect in the case, it would have a strong impact on him and substantially impair his ability to make a fair and impartial decision. Defendant challenged Cutler for cause, and the trial court denied that challenge. Defendant then peremptorily excused Cutler. Later, after defendant had exhausted his peremptory challenges, he attempted to renew his challenge for cause. The challenge was again denied.

N.C.G.S. § 15A-1212 provides in part:

A challenge for cause to an individual juror may be made by any party on the ground that the juror:

. . . .

(9) For any other cause is unable to render a fair and impartial verdict.

N.C.G.S. § 15A-1212(9) (1988).

This Court has recently held that the granting of a challenge for cause under N.C.G.S. § 15A-1212(9) rests in the sound discretion of the trial court and will not be reversed absent a showing of an abuse of discretion. *State v. Jaynes*, 342 N.C. 249, 270, 464 S.E.2d 448, 461 (1995), *cert. denied*, —— U.S. ——, —— L. Ed. 2d ——, 64 U.S.L.W. 3855 (1996). "Where the trial court can reasonably conclude from the *voir dire* . . . that a prospective juror can disregard prior knowledge and impressions, follow the trial court's instructions on the law, and render an impartial, independent decision based on the evidence, excusal is not mandatory." *Id.*

Here, upon further questioning, prospective juror Cutler stated clearly and unequivocally that he could put out of his mind what he had heard before and decide this case solely on what he heard in the courtroom. Therefore, we conclude that the trial court did not

err in denying the challenge for cause. This assignment of error is overruled.

**[5]** By another assignment of error, defendant contends that the trial court erred in allowing the State to ask leading questions of its witnesses. Defendant maintains that the crux of the State's case was the testimony of Gwendolyn Spencer and Kerry Spencer, who agreed to testify against defendant in exchange for pleading guilty to two counts of second-degree murder and one count of armed robbery. Defendant argues that throughout the trial, the State impermissibly posed leading questions to these two witnesses and to members of their families.

At the outset, we note that defendant provides numerous examples of what he contends were leading questions by the prosecutor. However, defendant objected on only two occasions. Therefore, with respect to the majority of the questions complained of, we review them under the plain error standard, which requires defendant to make a showing "that the error was so fundamental that the result would probably have been different absent the error." *State v. Kandies*, 342 N.C. 419, 452, 467 S.E.2d 67, 85 (1996).

The evidence against defendant in this case was overwhelming. Therefore, it cannot reasonably be believed that the questions of which defendant now complains, but to which he failed to object at the trial, resulted in error so fundamental " 'that justice cannot have been done.' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)).

We turn now to those two instances where defendant did object to the prosecutor's questions. The first occurred during the prosecutor's direct examination of Gwendolyn Spencer:

Q. Did the defendant ever say anything about the passenger's name?

A. Yes. He said that he, the guy didn't tell him Darby. He had told him something else.

Q. Did that concern the defendant? Did it worry the defendant?

MR. HARRELL: Objection.

THE COURT: Overruled.

A. I guess.

The second objection also occurred during the prosecutor's direct examination of Ms. Spencer:

Q. At the time or just after the shooting occurred when you were out of the car getting the gloves were you scared of Leverne Burrus?

MR. HARRELL: Objection.

THE COURT: Overruled.

A leading question has been defined as one which suggests the desired response and may frequently be answered "yes" or "no." However, a question is not always considered leading merely because it may be answered "yes" or "no." *State v. Mitchell*, 342 N.C. 797, 805, 467 S.E.2d 416, 421 (1996). We have said that a ruling on the admissibility of a leading question is in the sound discretion of the trial court and will not be reversed in the absence of an abuse of discretion. *Id.* at 806, 467 S.E.2d at 421.

We conclude that the two questions to which defendant objected at trial merely directed the witness toward the specific matter being addressed without suggesting the desired answer. Assuming *arguendo* that they were leading, however, a trial court may be reversed for an abuse of discretion only upon a showing that its ruling could not have been the result of a reasoned decision. *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986). We do not find such an abuse of discretion by the trial court here in allowing the questions to be asked and answered. This assignment of error is overruled.

[6] By another assignment of error, defendant contends that the trial court erred in overruling his objections to impermissible hearsay testimony. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.G.S. § 8C-1, Rule 801(c) (1992). After a thorough review of the specific statements complained of, we conclude either that they were not hearsay or that they were admissible under a recognized exception to the hearsay rule. Further, even assuming *arguendo* that any of the statements complained of were hearsay and not admissible under any recognized exception, we conclude the admission of those statements was harmless error in that they could not have influenced the jury's decision.

STATE v. BURRUS

[344 N.C. 79 (1996)]

For example, defendant assigns error to Gwendolyn Spencer's testimony that when the brown Toyota was parked in the trailer park, the passenger in the car told her his name was "Darby." Assuming *arguendo* that this statement was hearsay, we conclude that it could not have been prejudicial to defendant since there was sufficient other evidence that Darby Wood was the passenger in the vehicle.

Defendant next assigns error to Ms. Spencer's testimony that she heard Swindell say that "[h]e didn't have any money" and that Wood "told Steve [Swindell] to speak up for his gun because he knew that was his father's gun." We conclude these statements were not hearsay in that they were not introduced to prove the truth of the matter asserted. Even assuming *arguendo* that these statements were hearsay, they were exceptionally admissible as evidence of the plan or design of Swindell and Wood. *See* N.C.G.S. § 8C-1, Rule 803(3) (1992). The statements tend to show that the purpose of their visit to the trailer park was to negotiate with defendant for the return of the gun.

Defendant also assigns error to Kerry Spencer's testimony that when he passed by the brown Toyota, the driver asked him if he had seen "BoLo" and if he knew where he was. Kerry Spencer also testified that the driver asked him if he had any "coke." Again, we conclude that these statements were not hearsay since they were not offered to prove the truth of the matter asserted.

Later, Mr. Spencer testified to a further conversation between defendant, Swindell, and Wood. According to Mr. Spencer's testimony, Swindell and Wood had come back to the trailer park to negotiate with defendant about the return of the gun. Swindell and Wood made statements to the effect that they had additional money, that the gun belonged to Wood's father, that Wood was not an undercover policeman, and that Wood would try to get some additional money. We conclude these statements by Swindell and Wood were not offered for the purpose of proving the matters asserted. Even assuming *arguendo* that they were hearsay, they were admissible under Rule 803(3) as statements of their "intent, plan, motive [or] design." This assignment of error is overruled.

[7] By another assignment of error, defendant contends that the trial court erred in denying his motion to suppress his inculpatory statement.

When a defendant is in custody at the time he confesses, the State must prove, by a preponderance of the evidence, that the procedural safeguards of *Miranda* have been followed and that the statement was voluntary. *State v. Thibodeaux*, 341 N.C. 53, 58, 459 S.E.2d 501, 505 (1995).

The State's evidence on *voir dire* regarding defendant's confession consisted of the testimony of SBI Agent Varnell and Sheriff Mason. Varnell testified that on 29 December 1994, around 10:00 a.m., he and Deputy Sheriff Dees (who died before the trial) spoke with defendant, who was under arrest at that time, at his home. Varnell testified that he advised defendant of his *Miranda* rights and that defendant indicated he understood those rights. Subsequently, while defendant was being questioned, he indicated that he thought he could show the officers where the gun was located and agreed to do so. Agent Varnell stated that defendant appeared to be in control of his faculties and not to be under the influence of any substance. He further stated that no threats, promises, or other coercion or inducements were made to defendant.

Sheriff Mason testified that he was sitting on the porch when Deputy Dees came out and told him that defendant was volunteering to locate the gun. Sheriff Mason further testified that defendant was not handcuffed at the time, was not questioned in the vehicle, and appeared to be acting voluntarily. Sheriff Mason stopped the car when defendant said to "pull over."

A review of the *voir dire* testimony reveals that there was sufficient competent evidence before the trial court to support its findings, which compelled its conclusion that defendant's statement was voluntary. The testimony of both SBI Agent Varnell and Sheriff Mason shows that defendant was fully informed of his rights, that he understood them, and that he voluntarily accompanied Sheriff Mason to locate the gun.

[8] Defendant also argues that unless an in-custody interrogation is electronically recorded, it should be presumed that defendant's statements are not voluntary. This Court has ruled against requiring the recordation of in-custody interrogation; thus, there is no presumption in North Carolina against the admissibility of statements obtained during in-custody interrogations. *See State v. Thibodeaux*, 341 N.C. 53, 459 S.E.2d 501.

For the foregoing reasons, this assignment of error is overruled.

STATE v. BURRUS

[344 N.C. 79 (1996)]

[9] By another assignment of error, defendant contends that the trial court erred in denying his motions to dismiss and for a directed verdict because of the insufficiency of the evidence. When considering a motion to dismiss for insufficiency of the evidence, the trial court must determine whether there is substantial evidence of each element of the offense charged and of the defendant being the perpetrator of the offense. *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). The evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn from the evidence. *State v. Quick*, 329 N.C. 1, 405 S.E.2d 179 (1991).

In the present case, there was overwhelming evidence of defendant's guilt of the crimes of which he was convicted. Two of his three accomplices provided detailed eyewitness testimony. Various witnesses also placed the murder weapon in defendant's hand before, during, and after the killings. The scientific evidence showed conclusively that the bullets recovered from the victims' bodies were fired from that weapon. Catherine Gibbs and Victor Spencer, longtime friends of defendant's, also testified that immediately upon returning to the trailer park with the others, defendant confessed to them that he had committed the murders. Thus, there was substantial evidence tending to show that defendant had committed the crimes charged. Accordingly, the trial court did not err in denying defendant's motions to dismiss and for a directed verdict. This assignment of error is overruled.

[10] By another assignment of error, defendant contends that the trial court erred when it failed to intervene *ex mero motu* during the prosecutor's closing arguments. Because defendant did not object to any of these arguments, we review them only for gross impropriety. *State v. Brown*, 320 N.C. 179, 358 S.E.2d 1, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987).

Defendant first says that the prosecutor made several improper comments regarding the credibility of the State's witnesses. Defendant argues that the following excerpts from the prosecutor's remarks demonstrate this error:

Why not make up that he's the one that tried to cut Darby Wood's throat? Why not say that he's the one that threw the gun? She [Gwendolyn Spencer] could have done all of that, ladies and gentlemen, but she didn't because what she told you is what she

remembers, and that's the truth, and you'll have to judge that for yourself, ladies and gentlemen.

. . . .

Did she look like she was telling something that was not the truth? Just like what everybody else says, ladies and gentlemen, the same thing.

. . . .

. . . He [Kerry Spencer] tells you about cutting Darby Woods, ladies and gentlemen. If he's going to lie that is something to lie about, ladies and gentlemen.

We believe that these comments "were more in the nature of giving reason why the jury should believe the State's evidence than that the prosecuting attorney was vouching for the credibility of the State's witnesses." *State v. Bunning*, 338 N.C. 483, 489, 450 S.E.2d 462, 464 (1994). None of the statements complained of by defendant were so grossly improper that the trial court should have intervened *ex mero motu*.

[11] Defendant next says that the prosecutor's comments to the effect that Kerry Spencer had not attempted to cut Darby Wood's throat with a razor were improper. We disagree. The pathologist testified that Wood had some scratches on his neck that might have been caused by a dull tool. It is therefore a permissible inference from the evidence that the marks on Wood's neck were not made by a razor. Counsel are permitted to argue the facts based on evidence which has been presented as well as reasonable inferences to be drawn therefrom. *State v. Williams*, 317 N.C. 474, 481, 346 S.E.2d 405, 410 (1986).

[12] Defendant also complains that the prosecutor injected his personal beliefs as to why defense counsel did not have Kerry Spencer read the contents of a letter into evidence:

If there was something in that letter that said [defendant] wasn't guilty of this crime that letter would have been read to you from the witness stand and you would have heard everything in it.

"It is well established that a prosecutor may comment on a defendant's failure to produce witnesses or exculpatory evidence to contradict or refute evidence presented by the State." *State v. Morston*, 336 N.C. 381, 406, 445 S.E.2d 1, 15 (1994). Thus, we conclude it was not impermissible for the prosecutor to argue that if the contents of the

letter had been favorable to defendant, the witness would have been asked to read it.

**[13]** Defendant next complains that the prosecutor injected matters outside the record. Specifically, the prosecutor made repeated statements about the victims being robbed. Defendant was charged with the robbery of both Wood and Swindell; however, the jury found defendant not guilty as to these charges. Therefore, any such comments to the jury could not possibly have prejudiced defendant.

**[14]** Finally, defendant complains that the prosecutor misstated the law to the jury regarding the theory of acting in concert. The jury rejected the theory of acting in concert and found defendant guilty of murder based on premeditation and deliberation. Therefore, we conclude that these comments could not have prejudiced defendant.

For the foregoing reasons, this assignment of error is overruled.

Defendant received a fair trial, free of prejudicial error.

NO ERROR.